Gail Ivan DILLAPLAIN and Alice Winnie Dillaplain, Plaintiffs–Appellants,

v.

LITE INDUSTRIES, INC.,
Defendant–Respondent.

No. WD 42541.

Missouri Court of Appeals,
Western District.

April 24, 1990.

Richard I. Buchli, II, Kansas City, for plaintiffs-appellants.

Neysa L. Day, Gerald M. Kraai, Kansas City, for defendant-respondent.

Before KENNEDY, P.J., and LOWENSTEIN and BERREY, JJ.

LOWENSTEIN, Judge.

Plaintiffs, Gail and Alice Dillaplain, appeal an order quashing service of process and dismissing for lack of jurisdiction their petition seeking damages for personal injuries arising out of Lite Industries, Inc. manufacture of protective fire garments. The Dillaplains assert Lite had sufficient "minimum contacts" to subject it to the jurisdiction of Missouri courts. Lite, in turn, challenges the appealability of the trial court's order.

The Dillaplains sued defendant Lite in a two count petition for damages as a result of Gail Dillaplain's exposure to asbestos contained in fire-protective clothing manufactured by Lite. Gail was exposed to asbestos from Lite's products from 1954 to 1974 during his employment as a fireman at the Richards–Gebaur Air Force Base in Grandview, Missouri.

Lite was served by registered mail at its offices in Patterson, New Jersey, on June 30, 1988. On August 1st of that year, Lite appeared specially to contest in personam jurisdiction of the Missouri courts and filed its motion to quash service of process and to dismiss for lack of jurisdiction. In its order of September 21, 1988, the trial court suggested it would sustain Lite's motion, stating "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposely directed toward the forum state. This appears to be descriptive of the [instant] case...." However, the court granted sixty days to allow the parties to conduct discovery and submit additional suggestions.

Discovery revealed that Lite is a New York corporation with its principal place of business in Patterson, New Jersey. Lite is not registered to do business as a foreign corporation in Missouri, nor does it maintain offices or agents here. It has never negotiated a contract for the manufacture or assembly of protective fire garments in Missouri and it has never directly shipped such products into the state.

Lite is in the business of assembling protective fire garments for the United States government. The garments are assembled pursuant to design specifications set forth by the government. During the years 1960 to the time of suit, Lite submitted bids to the United States Government Defense Supply Agency for the purpose of supplying such garments to the government. Approximately 76 contracts with an estimated value of $25,000,000.00 were entered into during this period. Pursuant to the contracts, Lite was required to ship the garments to particular military depots and, in some instances, directly to air force and navy bases throughout the country. If shipped to depots, the government directed the distribution of the garments to military bases and other destinations where they were needed. Lite was aware of this process of redistribution. In addition, the contracts gave the government the power to instruct Lite where to ship the products and to require Lite to screen the garments at depots designated by the government anywhere within the continental United States. Discovery also revealed that Lite did not solicit business from the private sector. "99.9 percent" of its sales were military procurement for the

United States government. For practical purposes, the government was Lite's only customer.

On September 8, 1989, the court issued its order sustaining Lite's motion to quash service of process and dismissed the Dillaplain's petition without prejudice for lack of personal jurisdiction. Additional facts will be given *infra* as needed.

One preliminary matter must first be ruled upon. Lite has filed a motion to dismiss the appeal because the trial court order which quashed service and dismissed the petition for lack of personal jurisdiction was not a final order. Therefore, it is suggested, this court does not have jurisdiction. This motion was taken with the case. The thrust of the motion is the trial court did not dispose of the actual merits of the Dillaplains' claims. Lite never filed an answer, but appeared specially to contest personal jurisdiction and to challenge service.

■ Generally, an order which does nothing more than quash service of process is not considered a final judgment because it does not adjudicate the merits of the claim. Instead, it adjudicates only the validity of the particular service involved. *Continent Foods Corp. v. National–Northwood, Inc.*, 470 S.W.2d 315, 317 (Mo. App.1971). Also, a dismissal for lack of *in personam* jurisdiction is by the terms of Rule 67.03 without prejudice unless designated otherwise. Here, the dismissal was specifically designated to be without prejudice. As was said in *Turnbow v. Southern Railway Co.*, 768 S.W.2d 556, 558 (Mo. banc 1989):

> A dismissal without prejudice which the plaintiff may cure by filing another suit in the same court, is not a final judgment from which an appeal may be taken under Missouri law because it lacks the hallmarks of a final judgment—it fails to dispose of all the issues and parties to the cause of action.

On the other hand, if a motion is predicated on the basis of the petition not stating a cause of action, it is considered a judgment on the merits and "put[s] an end to the action," and therefore is an appealable order. *Continent Foods, supra*, at 317–18.

■ Confusion abounds when, as here, the motion to quash and dismissal of the petition (which for purposes of finding *in personam* jurisdiction claimed a tortious act committed in Missouri) are *both* sustained. Courts have held:

> Quashing service under the circumstances before the trial court was another way of saying that the petition did not state a claim upon which relief could be granted; this for the reason that for Sec. 351.633, supra, to be invoked, there must be a tort committed in Missouri in whole or in part by a foreign corporation against a resident or nonresident. To determine whether the service provisions of Sec. 351.633 can be used the petition must be examined. If it does not show on its face that the defendant has committed a tort in Missouri out of which the cause of action being asserted arises, attempted service under the statute would be subject to a motion to quash. If it does state a claim, then the procedure being used by plaintiff against these corporate defendants is valid and not subject to being quashed.

*Empiregas, Inc. of Noel v. Hoover Ball & Bearing Co.*, 507 S.W.2d 657, 660 (Mo. 1974). *See also Watlow Elec. Mfg. Co. v. Sam Dick Industries, Inc.*, 734 S.W.2d 295 (Mo.App.1987); *Simpson v. Dycon Intern, Inc.*, 618 S.W.2d 455 (Mo.App.1981); *Talkington v. J.S. Alberici Const. Co.*, 528 S.W.2d 5, 6 (Mo.App.1975).

In *Schwenker v. St. Louis County Nat. Bank*, 682 S.W.2d 868 (Mo.App.1984), under facts similar to this case, the appeal was dismissed where a petition had been dismissed for lack of personal jurisdiction in an action against a non resident defendant under section 506.500.1(3), RSMo 1986. The court, *sua sponte*, considered the appealability issue, even though the trial court had designated the order as final. *Id.* at 870. The court dismissed the appeal stating:

> The trial court's dismissal for lack of personal jurisdiction operates no differently than an order to quash service for

lack of jurisdiction which is not a final judgment from which an appeal will lie. *Continent Foods Corp.*, 470 S.W.2d at 317. Such an order is properly challenged by extraordinary writ. *See State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325 (Mo. banc 1984), *State ex rel. Caine v. Richardson*, 600 S.W.2d 82, 83 (Mo.App.1980). *Id.*

In *Abbate v. Tortolano*, 782 S.W.2d 810 (Mo.App.1990), this court echoed the rationale of *Schwenker* in a case arising out of a dismissal for failure to obtain personal jurisdiction for a failure to comply with substitution of a defendant following a suggestion of death. *Id.* at 811. The opinion stated that a dismissal for lack of personal jurisdiction is not final, and "is properly challenged by extraordinary writ but not by appeal." *Id.* at 813. *See also State ex rel. Degeere v. Appelquist*, 748 S.W.2d 855, 857 (Mo.App.1988); *Matter of Seiser*, 557 S.W.2d 263 (Mo.App.1977).

The plaintiffs here did not seek an extraordinary writ. At first blush, any attempt to distinguish the case at bar from *Schwenker* and *Abbate* is difficult. However, this court chooses to look at what was actually dismissed—was it a mere dismissal of the petition or of the action itself? *Nicholson v. Nicholson*, 685 S.W.2d 588, 589 (Mo.App.1985). "If the dismissal was such that a refiling of the petition at that time would be a futile act, then the order of dismissal is appealable." *Id.*

In ruling on Lite's motion, this court holds the trial court action in quashing service and dismissal for lack of jurisdiction adjudicated this case. The plaintiffs could not have turned around and refiled the petition. *Nicholson, supra,* at 589. The trial court ruling really decided the ultimate question for long arm jurisdiction by implicitly deciding the matter of whether a tort had been committed in this state. Refiling another petition would have been a "futile act." *Nicholson, supra. See also Allred v. National Old Line Ins. Co.*, 245 Ark. 893, 435 S.W.2d 104, 107 (1968); *Kneeland v. Ethicon Suture Laboratories*, 113 Cal.App.2d 335, 248 P.2d 447, 449

(1952); *Ter Har v. Backus*, 256 Or. 288, 473 P.2d 143, 144 (1970); *Brown v. Lamb*, 112 Ohio App. 116, 171 N.E.2d 191, 194 (1960). The court rules that an appeal here is warranted, but, even if the remedy of a writ, as espoused in *Schwenker* and *Abbate*, should have been utilized, it would add nothing but extra expense and delay to dismiss the appeal and have the appellants seek a writ of prohibition. All the facts necessary to decide the pivotal question of jurisdiction have been provided the court in the well prepared appeal briefs. In the interest of judicial economy and the desirability of a swift adjudication, the motion of Lite is overruled. *Foremost–McKesson, Inc. v. Davis*, 488 S.W.2d 193, 196 (Mo. banc 1972). Having found the trial court's order appealable, attention is now directed to the crux of this action.

■ In order for a non-resident defendant to subject itself to the long-arm jurisdiction of the state, § 506.500 *supra*, two elements must be present. First, the suit must arise out of the activities enumerated in the statute, and second, the defendant must have sufficient minimum contacts with Missouri to satisfy due process requirements. *Watlow Elec. Mfg., supra*, at 296–97. A particular purpose of the "long arm statute" is to provide in specifically enumerated categories, consistent with due process, the extending of jurisdiction of Missouri Courts as to out-of-state defendants. *State ex rel. Metal Service Center of Georgia, Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. banc 1984). Since the trial court's order was not specific as to why the petition was dismissed, both prongs will be discussed.

The Dillaplains rely on § 506.500.1(3), claiming Lite committed a tortious act within Missouri as a basis for long-arm jurisdiction. In order to prevail and gain *in personam* jurisdiction over Lite, they must make a prima facie showing of the validity of their claim. *State ex rel. Deere and Co. v. Pinnell*, 454 S.W.2d 889, 893 (Mo. banc 1970). This, Lite contends, the Dillaplains failed to do.

The Dillaplains allege in their petition, *inter alia*, that they were injured as a result of Gail Dillaplain wearing the defective garments assembled by Lite for the government. They do not allege that Lite designed the garments. Therefore, Lite proposes, since it could not deviate from the government's design without approval and had no knowledge of the dangers of asbestos unknown to the government, it is entitled to the "government contractor defense" recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988). Lite is putting the cart before the horse.

Although the Dillaplains are required to make a prima facie showing of their claim, they need not prove that "all of the elements that combine to spell ultimate liability in tort are present." *Pinnell, supra, at 893*, quoting *Nelson v. Miller*, 11 Ill.2d 378, 143 N.E.2d 673, 680 (1957). A trial on the merits is not required, only a hearing limited to an evaluation of contacts with the state and a showing that acts contemplated by the statute took place. *Pinnell, supra.* It would be premature at this point to decide whether the "government contractor defense" is a viable defense which would end all litigation in this cause. First, "whether the facts establish the conditions for the defense is a question for the jury," not for the trial court on a motion to dismiss. *Boyle, supra,* 487 U.S. at 513–15, 108 S.Ct. at 2519, 101 L.Ed.2d at 459. Second, it would be patently unfair and burdensome to require a plaintiff making a prima facie showing to rebut all defenses to his claim, especially where there has only been limited discovery. Finally, it is not all that clear whether the defense is available to Lite in the instant case. Although it claims the test as set out in *Boyle* has been met, there has been no evidence concerning whether Lite had knowledge of the dangers of asbestos unknown to the government. Moreover, the deposition testimony of Benjamin Shear, an officer of Lite, shows that Lite had made suggestions to the government regarding design and raw product deviation of the garments. The court therefore finds that at this stage,

the Dillaplains have made a prima facie case.

The power of a court to exercise *in personam* jurisdiction over a non-resident defendant is further limited by the due process clause of the fourteenth amendment. *Metal Service Center, supra,* at 327. A defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). This "minimum contacts" test is not susceptible of mechanical application; rather, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Kulko v. Superior Court of California, Etc.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132, 141 (1978), citing *Hanson v. Denckla,* 357 U.S. 235, 246, 78 S.Ct. 1228, 1235, 2 L.Ed.2d 1283, 1293 (1958); *See also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 485–86, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528, 549–50 (1985). The defendant's contacts with the forum state must also be purposeful and such that defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980). *See also Hanson v. Denckla, supra.*

■ In determining whether a foreign defendant has sufficient minimum contacts for Missouri courts to acquire *in personam* jurisdiction, five factors should be considered: 1) the nature and quality of the contact; 2) the quantity of those contacts; 3) the relationship of the cause of action to those contacts; 4) the interest of Missouri in providing a forum for its residents; and 5) the convenience or inconvenience to the parties. *Watlow Elec. Mfg., supra, at 297; Newhard, Cook and Co. v. Inspired Life Centers, Inc.,* 708 F.Supp. 1066, 1069 (E.D. Mo.1989). The first three factors are of primary importance while the last two are of secondary importance. *Watlow Elec. Mfg., supra.* In addition, Missouri courts have held that the minimum contacts re-

quired in the products liability area involving stream of commerce are less stringent than in other areas. *State ex rel. William Ranni Associates, Inc. v. Hartenbach,* 742 S.W.2d 134, 138 (Mo. banc 1987); *State ex rel. Wichita Falls Gen. Hosp. v. Adolf,* 728 S.W.2d 604, 608 (Mo.App.1987).

■ Once decided that a defendant purposefully established minimum contacts with the forum state, other factors are to be considered to determine whether the assertion of *in personam* jurisdiction would comport with "fair play and substantial justice." *International Shoe, supra.* A court must consider 1) the burden on the defendant, 2) the interest of the forum state, 3) the plaintiff's interest in obtaining relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,* 480 U.S. 102, 114–15, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92, 105–106 (1987), citing *World–Wide Volkswagen, supra. See also Burger King, supra,* 471 U.S. at 477, 105 S.Ct. at 2184. While destroying jurisdiction in instances where minimum contacts have been established, *Asahi, supra,* these considerations may also serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Burger King, supra.*

■ The Dillaplains assert that Lite's contacts with the state of Missouri are sufficient to satisfy the due process requirements of the fourteenth amendment. This court agrees. Lite received "99.9 percent" of its business from the United States government. After winning a contract, Lite would send the garments to military depots, and from there, the garments would be shipped to naval and air bases throughout the country. Lite was fully aware of this "redistribution" process, and this court assumes it was also aware there were air bases in the state of Missouri. Given this pattern, it would not be unfair to subject Lite to the jurisdiction of this state; Lite could "reasonably anticipate being haled into court" in the state of Missouri. *World–Wide Volkswagen, supra.*

Although this is a type of "stream of commerce" case, this court is not holding the mere placement of goods into commerce is sufficient to gain *in personam* jurisdiction if the product "fortuitously" appears in the forum state. *Burger King, supra,* 471 U.S. at 486, 105 S.Ct. at 2189. Rather, the holding is that placing a product into the stream of commerce *plus* knowledge of its ultimate destination is sufficient for such jurisdiction. See *World–Wide Volkswagen, supra,* 444 U.S. at 297–98, 100 S.Ct. at 567. In the instant case, it was not "fortuitous" Lite's garments appeared in Missouri. Lite made a conscious decision to sell its products to the United States government knowing such products would ultimately reach a state like Missouri having an air base. The cornerstone of *in personam* jurisdiction is whether a defendant "should reasonably anticipate being haled into court" in. that forum, *Id.;* here, there is little doubt Lite knew its products were being distributed to and used in every state with an air force base. It is this knowledge which compels a finding jurisdiction here is proper.

Moreover, Lite received approximately 76 contracts with an estimated value of $25,-000,000.00 for the period in question. It would be patently unfair for Lite to reap the benefits of this relationship without suffering the burdens. To sustain the trial court's order would enable Lite to raise the defense of lack of jurisdiction in all but a few states, even though no doubt existed as to the ultimate destination of the product. This court refuses to give such protection.

In sum, the nature, quality and quantity of Lite's contacts with the state of Missouri were sufficient to give our courts *in personam* jurisdiction. *Watlow Elec. Mfg., supra,* at 297. The *Asahi* factors do not help Lite, and in fact tend to strengthen the reasonableness of Missouri's jurisdiction. *Burger King, supra.* It should be carefully noted, however, that this court

withholds decision as to whether the mere placement of a product into the stream of commerce is enough to gain *in personam* jurisdiction over a non-resident defendant. See *Asahi, supra,* 107 S.Ct. at 1035–36. The facts as given in this action do not warrant such a decision.

The trial court's order quashing service of process and dismissing the Dillaplain's petition for lack of personal jurisdiction is reversed and the case is remanded.