**LASER VISION CENTERS, INC.,**
**Plaintiff–Respondent,**

v.

**LASER VISION CENTERS**
**INTERNATIONAL, SpA,**
**Defendant–Appellant.**

No. 68341.

Missouri Court of Appeals,
Eastern District,
Division Two.

July 23, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 28, 1996.

Application to Transfer Denied
Oct. 22, 1996.

Joan B. Bernstein, Stefan J. Glynias, Evans & Dixon, St. Louis, for appellant.

Francis E. Pennington, St. Louis, for respondent.

DOWD, Judge.

Laser Vision Centers International, SpA ("SpA") appeals from the trial court's order in favor of Laser Vision Centers, Inc. ("LVCI") denying SpA's motion to set aside the default judgment entered against it by finding that SpA is subject to jurisdiction in Missouri under its long-arm statute. We affirm.

LVCI, a Delaware corporation with its principal place of business in St. Louis County, Missouri, operates a number of optical surgery centers that utilize excimer laser technology. SpA is an Italian company based in Milan, Italy. LVCI was approached by members of the newly formed SpA with a proposal for a cross-ownership arrangement whereby SpA would market LVCI's concept in Europe. A series of meetings took place between the parties in New York and Milan. In one instance, a representative of SpA flew to St. Louis to make a presentation to LVCI's board of directors and to encourage LVCI to invest in SpA. Proposals and drafts of the eventual agreement were mailed and

faxed between New York and St. Louis. The result of these negotiations was a May 1991 letter agreement that SpA faxed to LVCI in St. Louis, Missouri. Pursuant to this agreement, LVCI paid $175,000 to an agent of SpA and issued 200,000 shares of restricted LVCI common stock to SpA.

After a series of disputes and resulting negotiations, the parties modified the May 1991 agreement in March 1993 and, among other things, added the following binding arbitration clause:

> Any claimed breaches of this Agreement shall be submitted to binding arbitration. Arbitration instituted by SpA shall be brought in St. Louis, Missouri. Arbitration instituted by LVCI shall be brought in London, England. Laws of the State of Delaware, U.S.A. shall govern.

On October 8, 1993, LVCI sued SpA in Missouri for breach of contract.[1] The president of SpA was served on October 25, 1993. SpA chose not to file a responsive pleading. Consequently, the trial court entered a default judgment in the amount of $175,000 against SpA and in favor of LVCI in December 1993. The trial court further ordered SpA to return all shares of LVCI stock. In June 1994, SpA filed a motion to vacate the default judgment for lack of personal jurisdiction. The trial court denied SpA's motion to vacate and found SpA "had sufficient contacts with Missouri to satisfy the requirements of Section 506.500 RSMo., Rule 54.06, and due process." The trial court further found SpA "had sufficient notice that its contacts with Missouri could subject it to Missouri's jurisdiction."

In its first two points on appeal, SpA asserts the default judgment granted in favor of LVCI is void and should have been vacated by the trial court because 1) the petition failed to state any facts that supported the exercise of personal jurisdiction over SpA; and 2) Missouri, substantively, did not have personal jurisdiction over SpA.[2] We disagree.

A trial court's ruling on a motion to vacate a default judgment is usually reviewed under an abuse of discretion standard. *See Burris v. Terminal Railroad Ass'n*, 835 S.W.2d 535, 537 (Mo.App. E.D.1992) (citation omitted). However, when a party argues a default judgment should be vacated because it was void on jurisdictional grounds, the issue is a question of law which we review independently on appeal. *Stavrides v. Zerjav*, 848 S.W.2d 523, 527 (Mo.App. E.D.1993).

We examine first the sufficiency of the petition. In Missouri, personal jurisdiction may be obtained upon any corporation which does certain acts in this state. Rule 54.06(a)(1–6).[3] One of the enumerated acts is the formation of a contract within this state. Rule 54.06(a)(2). Here, the petition alleged "that Defendant transacted business within Missouri and made a contract in Missouri, and Plaintiff's claims arise out of same." These allegations are further supported by the facts described in Counts I and II of the petition which list the dates of the two alleged contracts and describe the money and stocks exchanged pursuant to those agreements. Moreover, the second alleged agreement was attached to the petition and incorporated by reference. Therefore, the petition alleged sufficient facts to invoke Missouri's long-arm statute.[4]

Next, SpA asserts the default judgment was void pursuant to Rule 74.06(b)(4)[5] because Missouri could not constitutionally ex-

---

**1.** Four days later, SpA filed a tortious interference claim against LVCI in New York that was later dismissed on *forum non conveniens* grounds in October 1994.

**2.** Although SpA did not challenge the sufficiency of the petition to the trial court, it may, on appeal, collaterally attack the judgment on jurisdictional grounds. *Crouch v. Crouch*, 641 S.W.2d 86, 90 (Mo. banc 1982).

**3.** The Missouri long-arm statute, § 506.500.1, RSMo 1994, is substantially similar to Rule 54.06.

**4.** In an argument that is substantially similar to its third point on appeal, SpA asserts that if a petition facially evidences a binding arbitration clause, a trial court must stay the action, regardless of the parties' actions. We will discuss that contention in Point III.

**5.** The rule states in pertinent part: "On motion and upon such terms as are just, the court may relieve a party ... from a final judgment or order ... [if] (4) the judgment is void; ...."

ercise personal jurisdiction over SpA. We disagree.

A foreign defendant is subject to the long-arm jurisdiction of this state when it does any of the enumerated acts in Rule 54.06 [6] and when it has sufficient minimum contacts with Missouri to satisfy the due process requirements of the Fourteenth Amendment. *See Watlow Elec. Mfg. v. Sam Dick Industries,* 734 S.W.2d 295, 297 (Mo. App.1987). Furthermore, the "[t]ransacts any business" prong in the rule must be construed broadly so that even a single transaction may confer jurisdiction under the rule if that is the transaction sued upon. *State ex rel. Metal Serv. Center of Georgia, Inc. v. Gaertner,* 677 S.W.2d 325, 327 (Mo. banc 1984). Nevertheless, the defendant's minimum contacts with Missouri must be such that maintenance of the action does not offend "traditional notions of fair play and substantial justice," that the defendant purposefully availed itself of the privilege of transacting activity in Missouri, and that the defendant should have reasonably anticipated being "haled into court" here. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, (1945); *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

We find SpA's activities fall within Missouri's long-arm statute. First, SpA committed each of the first two acts listed in Rule 54.06(a). SpA transacted business in Missouri. It deliberately sought out LVCI. The promoters, for what became known as SpA, contacted and visited LVCI in Missouri with a proposal to create an international company that would market LVCI's product in Europe. *See Gaertner,* 677 S.W.2d at 325–28; *Shady Valley Park & Pool, Inc. v. Dimmic,* 576 S.W.2d 579, 580 (Mo.App.1979). Second, SpA was a party to a contract partially negotiated and ultimately accepted in Missouri. The May 1991 letter agreement became an enforceable contract when LVCI accepted it by performing its terms; that is, from a bank in Missouri, LVCI wired an agent of SpA $175,000 and delivered thousands of shares of stock to SpA. *See Garrity v. A.I. Processors,* 850 S.W.2d 413, 417 (Mo. App. S.D.1993) (citation omitted). Furthermore, SpA acknowledged in a letter to LVCI in October 1993 that the May 1991 letter agreement was indeed an enforceable contract. SpA also stated in its brief to this court that "... an agreement between the parties was reached in 1991. It was manifested by the acts of LVCI and SpA." Thus the evidence supports the trial court's finding that LVCI accepted the May 1991 letter agreement by performing its terms in Missouri. And for Rule 54.06(a) purposes, acceptance of a contract in Missouri is equivalent to forming a contract in this state. *See Peabody Holding Co., Inc. v. Costain Group, PLC,* 808 F.Supp. 1425, 1433 (E.D.Mo.1992). Such acceptance, therefore, is equivalent to the "final act" of contract formation necessary to show the contract was indeed made in Missouri. *See Id.* at 1433; *Dimmic,* 576 S.W.2d at 580. Consequently, by committing each of the first two acts in Rule 54.06(a), SpA placed itself within reach of Missouri's long-arm statute.

Furthermore, we find the exercise of personal jurisdiction over SpA by a court of this state does not offend any traditional notions of due process. SpA, as conceded by its president, was served with process and thus received notice of the petition filed by LVCI. The promoters of SpA voluntarily decided to do business with a corporation based in Missouri. This active recruitment of

---

**6.** (a) Service outside the state sufficient to authorize a general judgment in personam may be obtained upon any person, executor, administrator or other legal representative, firm or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this Rule 54.06:

   (1) Transacts any business within this state;

   (2) Makes any contract within this state;

   (3) Commits a tortious act within this state;

   (4) Owns, uses or possesses any real estate situated in this state;

   (5) Contracts to insure any person, property or risk located within this state at the time of contracting;

   (6) Engages in an act of sexual intercourse within this state with the mother of a child within or near the probable period of conception of that child.

LVCI's investment satisfies the due process requirement of "purposeful availment." *See Hanson,* 357 U.S. at 253, 78 S.Ct. at 1240. Furthermore, SpA negotiated an arrangement in the March 1993 agreement that could have brought them to Missouri for binding arbitration. Given that clause, SpA can hardly argue it did not "reasonably anticipate being haled into court" here. Additionally, the matter over which personal jurisdiction is being asserted arises out of the very contacts SpA had with Missouri. Therefore, we find the trial court did not abuse its discretion in entering a default judgment against SpA. Point denied.

SpA's third point on appeal is as follows: THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT ENTERED ITS JUDGMENT AND ORDER ON APRIL 5, 1995 WHICH DENIED DEFENDANT SPA'S MOTION TO VACATE THE DEFAULT JUDGMENT FOR LACK OF SUBJECT MATTER JURISDICTION OVER THE DISPUTE, BECAUSE THE PARTIES' CLEAR INTENTION EXPRESSED IN THEIR AGREEMENT REQUIRED LVCI TO SUBMIT ITS BREACH OF AGREEMENT CLAIMS TO ARBITRATION IN LONDON, ENGLAND.

 SpA argues that under relevant case law and public policy a trial court must "dismiss a suit and compel arbitration where the parties have agreed to arbitrate their dispute." SpA's argument is apparently based upon the contention that if a petition on its face evidences an agreement that mandates binding arbitration, prior to filing suit, a trial court must stay the action regardless of the parties actions. We disagree. A trial court must stay a lawsuit on the basis of an arbitration clause only after a party moves for such relief and only after the trial court determines, under applicable state law, the issue is arbitrable under the agreement. *See Allied–Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, ——, 115 S.Ct. 834, 837, 130 L.Ed.2d 753 (1995); *Volt Info. Sciences v. Bd. of Trustees,* 489 U.S. 468, 471, 109 S.Ct. 1248, 1251–52, 103 L.Ed.2d 488 (1989); *State ex rel. PaineWebber v. Voorhees,* 891 S.W.2d 126, 128 (Mo. banc 1995). Here, SpA failed to file any responsive pleading after being served, much less a motion to stay on the basis of the arbitration clause contained in the March 1993 agreement. Point denied.

The judgment of the trial court is affirmed.[7]

CRAHAN, P.J., and CRANDALL, J., concur.

---

7. Appellant's "Motion to Vacate Judgment For Lack of Jurisdiction, Compel Arbitration, and Dismiss the Petition" is denied consistent with this opinion.