**CHROMALLOY AMERICAN CORPORATION and E.F. Company, Appellants,**

v.

**ELYRIA FOUNDRY COMPANY, Respondent.**

No. 79934.

Supreme Court of Missouri, En Banc.

Sept. 30, 1997.

Rehearing Denied Oct. 21, 1997.

W. Stanley Walch, J. Powell Carman, JerryR. Fink, Thompson Coburn, St. Louis, for Appellants.

Jan. E. Dodd, Stephen P. Niemira, St. Louis, for Respondent.

## PER CURIAM.[1]

Chromalloy American Corporation and E.F. Company (collectively Chromalloy) appeal from the circuit court's dismissal of their petition against Ohio-based Elyria Foundry Company (Elyria) for lack of personal jurisdiction. Chromalloy contends on appeal that the trial court erred in dismissing the petition because Elyria transacted business in Missouri and thereby became subject to the court's jurisdiction under the Missouri long arm statute, section 506.500.1(1), RSMo 1994.[2] Reversed and remanded.

Chromalloy's petition alleged that Chromalloy and Elyria entered into a contract that, among other things, provided that Elyria would purchase an Ohio foundry and its relevant assets from Chromalloy. It further claims that Elyria breached this contract by failing to make payments for this foundry.

Elyria responded by filing a motion to dismiss for lack of personal jurisdiction or, in the alternative, forum non conveniens. At-

---

1. The appeal in this case was originally decided by the Court of Appeals, Eastern District, in an opinion written by the Honorable Robert G. Dowd, Jr. Following transfer to this Court, the court of appeals opinion, as modified, is adopted as the opinion of this Court.

2. All further statutory references are to RSMo 1994.

tached to this motion was the affidavit of Gregg L. Foster (Foster), the president and sole shareholder of Elyria.[3] The affidavit states that in early 1983 Foster went to St. Louis to offer to purchase the foundry. This offer was promptly rejected without negotiation. Chromalloy reinitiated negotiations with Elyria but, this time, in Ohio. Foster again went to St. Louis but only to review the documents yielded by the Ohio negotiations. The affidavit also claims that the contract was later executed in Ohio.

Chromalloy filed a memorandum in opposition to this motion along with the affidavit of James A. Dowling III (Dowling), the assistant general counsel to Chromalloy, who negotiated the contract with Elyria. According to this affidavit, the initial meeting between Foster and Chromalloy resulted in agreement on the basic terms of the contract. Long distance communications between Chromalloy in Missouri and Elyria in Ohio were maintained as the contracts were being drafted. Foster returned to St. Louis to discuss, review, and make final changes in the contract.

Elyria responded with a "Reply in Support of Its Motion to Dismiss" and included an affidavit by Philip Dawson (Dawson), the negotiating attorney for Elyria. This affidavit supports Foster's, as it states that all negotiations relating to the sale of the foundry were conducted in Ohio. Also attached was an additional affidavit created by Foster, specifically denying the allegations made in Dowling's affidavit.

The trial court sustained Elyria's motion to dismiss without comment. Chromalloy filed a motion to reconsider. The court overruled this motion, indicating that it did so because of a lack of personal jurisdiction.

■ In its only point on appeal, Chromalloy contends that the trial court erred in dismissing its petition because, under section 506.500.1(1), the circuit court had jurisdiction

over Elyria as it transacted business in Missouri.

■ A reviewing court has a duty to determine its jurisdiction sua sponte. *Trust by Sherman v. Wilson,* 928 S.W.2d 897, 898 (Mo.App.1996). Here, the trial court dismissed Chromalloy's petition without indicating whether the dismissal was with or without prejudice. Under Rule 67.03, a dismissal for lack of personal jurisdiction is without prejudice unless designated otherwise. The general rule is that a dismissal without prejudice is not a final judgment and, therefore, is not appealable. *State ex rel. State of Ill. v. Jones,* 920 S.W.2d 116, 117 (Mo.App.1996).

■ There are exceptions to this rule. A dismissal without prejudice may operate to preclude the party from bringing another action for the same cause and may be res judicata of what the judgment actually decided. *Mahoney v. Doerhoff Surgical Services,* 807 S.W.2d 503, 506 (Mo. banc 1991). An appeal from such a dismissal can be taken where the dismissal has the practical effect of terminating the litigation in the form cast or in the plaintiff's chosen forum. *City of Chesterfield v. Deshetler Homes,* 938 S.W.2d 671, 673 (Mo.App.1997). The trial court's dismissal in the instant case had such a practical effect. To the extent *Quelle Quiche v. Roland Glass Foods,* 926 S.W.2d 211 (Mo.App.1996); *Abbate v. Tortolano,* 782 S.W.2d 810 (Mo.App.1990); and *Schwenker v. St. Louis County Nat. Bank,* 682 S.W.2d 868 (Mo.App.1984), can be read as precluding a direct appeal in circumstances similar to those in this case, they are overruled and should no longer be followed.

Chromalloy contends that the circuit court had jurisdiction under Missouri's long arm statute, section 506.500, which states in relevant part:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an

3. Consideration of affidavits supporting a motion to dismiss for lack of personal jurisdiction under section 506.500 is proper and does not serve to convert the motion to dismiss into a motion for summary judgment. We note, however, that the trial court's inquiry is limited to an examination of the petition on its face and the supporting affidavits to determine the limited question of personal jurisdiction. The trial court does not consider the merits of the underlying action. *Dillaplain v. Lite Industries, Inc.,* 788 S.W.2d 530, 532 (Mo.App.1990); *Empiregas, Inc., of Noel v. Hoover Ball & Bearing Co.,* 507 S.W.2d 657, 660 (Mo. banc 1974).

agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state.

Chromalloy's pleadings alleged that negotiations for the purchase of the foundry occurred in Missouri and that these negotiations amounted to a transaction of business for purposes of section 506.500.1(1). By dismissing the petition on the basis of personal jurisdiction, the trial court implicitly rejected those factual allegations, which formed the basis of Chromalloy's claim of jurisdiction. This effectively precludes Chromalloy from refiling its claim in Missouri.

■ Stated another away, a dismissal without prejudice that a plaintiff may cure by filing another suit in the same court is not a final judgment from which an appeal may be taken. *Turnbow v. Southern Ry. Co.*, 768 S.W.2d 556, 558 (Mo. banc 1989). Chromalloy has no such option here. To re-offer the same rejected claims that supported Chromalloy's contention that business was transacted in Missouri as support for a new contention that the contract was formed in Missouri would be an exercise in futility. The trial court's dismissal has the effect of terminating Chromalloy's claim in the form in which it was cast. See *City of Chesterfield*, 938 S.W.2d at 673.

The standard of review of dismissals for lack of jurisdiction was concisely stated in *Quelle Quiche v. Roland Glass Foods*, 926 S.W.2d 211, 213 (Mo.App.1996):

When a motion to dismiss for lack of personal jurisdiction is made on a matter not appearing on the record, the trial court may hear it on affidavits presented by the parties, or the court may direct that the matter be heard wholly or partly on oral testimony or deposition. When affidavits are presented, the trial court may believe or disbelieve any statements made within those affidavits. It is within the sole discretion of the trial court to make such factual determinations. [The appellate court] must affirm the trial court's ruling regarding jurisdiction if the affidavits submitted by the defendants in support of their motions to dismiss show they did not commit any act sufficient to invoke the jurisdictional provisions of the Missouri [l]ong [a]rm [s]tatute. (citations omitted)

■ In the instant case, Elyria's affidavits show that Foster traveled to St. Louis to offer to purchase the foundry but that this offer was immediately rejected. They also show that, at Chromalloy's behest, negotiations were subsequently reinitiated in Ohio. After these negotiations had concluded, Foster made one additional trip to St. Louis for a review of the resulting contracts. He returned with these documents to Ohio for additional review with the assistance of counsel. The contracts were then executed in Ohio. Based upon the evidence in these affidavits, we conclude that the trial court erred in concluding it had no jurisdiction over Elyria.

■ In order for a non-resident defendant to subject itself to the long-arm jurisdiction of this state, two elements must be present. *Dillaplain v. Lite Industries, Inc.*, 788 S.W.2d 530, 533 (Mo.App.1990). First, the suit must arise out of the activities enumerated in the long arm statute; second, the defendant must have sufficient minimum contacts with Missouri to satisfy due process requirements. *Id.* The visits by Foster to Missouri meet these requirements.

■ Chromalloy alleges, and we agree, that trips undertaken by Foster constituted the transaction of business within the state of Missouri. We must construe broadly the "transaction of business" element in the long arm statute so that even a single transaction may confer jurisdiction, if that is the transaction that gives rise to the suit. *Laser Vision Centers, Inc. v. LVCI*, 930 S.W.2d 29, 32 (Mo.App.1996). Here, Elyria's president and sole shareholder traveled to Missouri intending to contact a Missouri corporation and propose the purchase of one of its assets. A single business proposal to a Missouri corpo-

ration has been found sufficient to constitute the transaction of business. See *id.* The fact that the offer was initially rejected does not make it less significant. Negotiations often begin with the rejection of a preliminary offer.

Foster's second trip to Missouri to review the documents produced by prior negotiations also amounted to the transaction of business. The trip was a part of the ongoing process that resulted in the sale of the foundry.

Elyria has cited *Watlow Elec. Mfg. v. Sam Dick Industries,* 734 S.W.2d 295 (Mo.App. 1987), for the proposition that any alleged activity, relied upon to establish jurisdiction as transacting business, must be an "essential factor" in the completion of the contract. We find no such pronouncement of law in *Watlow.*

There, a contract between a Missouri and a Washington corporation for the sale of electric vaporizers had been completed. The Washington company's chief engineer came to Missouri to review the design. The foreign corporation argued that because the contract had been completed, the engineer's visit could not be considered the transaction of business. The court of appeals disagreed, noting that only a prototype vaporizer had been ordered and that further review of the design was necessary to meet the purchaser's requirements. As such, the engineer's trip was an "essential factor" in the completion of the contract and must be viewed as the transaction of business. *Id.* at 298. This does not proclaim a new requirement for what constitutes the transaction of business. Rather, it explains why the court viewed post-contract activity as a part of the deal.

In contrast, Elyria admits that Foster's second trip took place before any contract was signed. Foster's review of the contract documents was a part of the ongoing process that resulted in the foundry's sale. As such, Foster's second trip was transacting business under section 506.500.

Finally, we consider whether Elyria's activities in Missouri satisfy the principles of due process. A defendant must have sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Dillaplain,* 788 S.W.2d at 534, quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This "minimum contacts" test is not susceptible of mechanical application; rather, "the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Id.* quoting *Kulko v. Superior Court of California, Etc.,* 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132 (1978). A defendant's contacts with the forum state must be purposeful and such that defendant should reasonably anticipate being haled into court in the forum state. *Id.*

There are sufficient minimum contacts between Elyria and this state. Foster's trips to Missouri were purposeful visits, made with the intention of initiating or furthering the purchase of the foundry from a Missouri corporation. Finding no due process violation and the transaction of business in Missouri, we conclude that the trial court erred in dismissing Chromalloy's claim for lack of personal jurisdiction.

The judgment is reversed and the cause is remanded.[4]

All concur.

---

4. We make no statement on Elyria's claim of forum non conveniens.