**PRODUCTS PLUS, INC., Appellant,**

v.

**CLEAN GREEN, INC., Respondent.**

No. 25352.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 13, 2003.

---

Timothy B. O'Reilly & Eric G. Jensen, Springfield, for Appellant.

Warren E. Harris, Taylor, Stafford, Clithero, Fitzgerald & Harris LLP, Springfield, for Respondent.

ROBERT S. BARNEY, Presiding Judge.

Appellant, Products Plus, Inc., a Missouri Corporation ("Appellant"), appeals from the judgment of the Circuit Court of Christian County that dismissed Appellant's cause of action against Clean Green, Inc., a North Carolina Corporation ("Respondent"), because the court lacked personal jurisdiction over Respondent.

Appellant raises two points of court error. In Point One Appellant faults the trial court for sustaining Respondent's motion to dismiss Appellant's cause of action. Appellant argues that Respondent entered into a contract with Appellant in Missouri for the sale, by Respondent to Appellant, of an antifreeze recycling machine, which

Appellant claims in its cause of action was defective.

Appellant maintains that Respondent's activities in Missouri giving rise to Missouri's personal jurisdiction over Respondent under the long-arm statute,[1] are as follows: (1) entering into negotiations for the sale of the machine to Appellant via facsimile, telephone, private courier and U.S. mail; (2) entering into a contract in Missouri; and (3) in pursuance of the contract: (a) arranging to pick up and transport the machine to North Carolina; (b) arranging to transport the machine back to Missouri, and (c) by otherwise placing a defective product in the stream of commerce in Missouri. Furthermore, Appellant maintains that by these activities Respondent has sufficient minimum contacts with Missouri to satisfy due process requirements.

In its second point, Appellant reiterates its position set out in Point One asserting it has a cause of action against Respondent and further sets out that any action pending in North Carolina does not require dismissal of the lawsuit. [2]

■ Appellant has the burden of making a prima facie showing that the trial court has personal jurisdiction over Respondent, and the determination of the jurisdictional issue is for the trial court in the first instance. *Farris v. Boyke*, 936 S.W.2d 197, 200 (Mo.App.1996). In this connection, the trial court may consider the credibility of affidavits presented. "However, the sufficiency of the evidence to make a prima facie showing that the trial court may exercise personal jurisdiction is a question of law, which this Court reviews independently on appeal." *Id.*

The record reveals, *inter alia*, affidavits made by Tommy Ayers ("Ayers"), President and owner of Appellant, and Tim Wilkinson ("Wilkinson"), President of Respondent, together with four letters from Respondent to Appellant, and a two-page contract entered into between Appellant and Respondent for the sale of "Antifreeze Reprocessing Equipment".

In an affidavit executed by Ayers, he asserts that in October and November 2001, he had telephone conversations with

1. Section 506.500 sets out in relevant part that:

> 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
> (1) The transaction of any business within this state;
> (2) The making of any contract within this state;
> (3) The commission of a tortious act within this state. . . .

*See also* Rule 54.06(a), Missouri Court Rules (2001).

2. There is reference in the record to an action pending in North Carolina involving the two parties. As best we discern, Appellant filed

its claim against Respondent in Missouri on August 21, 2002, and Respondent filed its claim in North Carolina involving Appellant the following day. Appellant argues it is irrelevant, legally, if there is another action in North Carolina. It maintains that the machine at issue exists in Missouri and it is "more convenient for all of the parties and experts to be in this location in order to view and test the misrepresented capacity of the machine."

Here, the judgment is silent as to the basis of the trial court's decision in dismissing Appellant's petition for lack of personal jurisdiction. Respondent concedes, however, that the "trial court did not base it [sic] decision on this point," and that Respondent "does not believe that the issue is ripe for appeal." We agree. In either event, in view of our holding in Point One, the issue raised by Appellant in Point Two has been rendered moot.

Wilkinson regarding the purchase of recycling equipment from Respondent and that the two had "numerous and ongoing communications together regarding the machine" during these two months by "phone and facsimile." He also sets out that he received by facsimile a letter from Wilkinson dated November 12, 2001, "representing various things about the machine." Ayers further sets out that Wilkinson sent him a contract, previously signed by Wilkinson, that specified the terms of the agreement. A reading of the contract shows that the contract was dated December 11, 2001, and Ayers signed in his capacity as Appellant's President on December 13, 2001.[3]

Ayers also states in his affidavit that he fulfilled his obligations by "writing the check for $15,000 and sending it to [Respondent], and by disassembling and preparing parts of [Appellant's] machine for pick up by [Respondent]" and that all these actions were performed in Christian County, Missouri "pursuant to the terms of [Appellant's] agreement with [Respondent]."

Ayers also sets out that Respondent did not perform the contract in a timely manner and did not provide the machine in the six to eight weeks that was represented in the contract, as shown by the facsimile that Respondent sent and Ayers received on March 11, 2002. Ayers asserts that he spoke with Wilkinson on multiple occasions between December 2001 and June 2002 and "expressed to him the urgency of getting the machine up and running immediately ... and he replied that he understood every time."

Ayers also states Wilkinson "actually arranged and paid for the pickup of our existing machine, which was to be incorporated into the new machine, by his agent American Freightways on 5/8/02." However, Wilkinson's agent "did not return the machine until 5/28/02, and the machine was not in proper working order because Mr. Wilkinson left out membrane elements, inner connectors and end cap connectors." Ayers also asserts that the "omitted parts were not received until 6/14/02, and we were finally able to get the machine up and running at that time[,]" but the "machine does not process anti-freeze at the represented rates and is causing ongoing damages in lost sales and lost profits on a daily basis."

In an affidavit in support of Respondent's motion to dismiss for lack of personal jurisdiction, Wilkinson sets out, in pertinent part, that he is Respondent's President; Respondent is in the business of re-processing used antifreeze for resale on the open market; "I do not sell reprocessed antifreeze outside of North Carolina"; and "other than [Appellant] and its President, Tommy Ayers, I have never sold any reprocessing equipment to any individual in the State of Missouri."

Wilkinson also states that "I do not advertise or sell any other products in the

---

3. The contract was for "Antifreeze Reprocessing Equipment Manufactured by Clean Green, Inc. and Sold to Products Plus, Inc." It contained five "conditions," to wit:

1. [Respondent] will take in on trade an existing UF system that is owned by [Appellant]. [Respondent] will send a truck to pick up the UF system in Nixa, Mo. [Respondent] will deliver the new unit back to Nixa, Mo. when it is completed.
2. The machine will take approximately 6–8 weeks to complete.
3. To begin production a deposit of $15,000.00 is required.
4. The cost of the machine is $65,0000.00 with a trade in of $25,000.00, which will leave a balance of $40,000.00.
5. The deposit of $15,000 when received will be deducted from the $40,000.00 balance leaving a remaining balance of $25,000.00 due at delivery.

State of Missouri"; "other than the sale of reprocessing equipment to [Appellant] and its President, Tommy Ayers, I have never sold reprocessing equipment to anyone within the State of Missouri"; Ayers had contacted Wilkinson "directly to obtain information in regards to the filtration process that I invented for the recycling of used antifreeze"; and Ayers "made two or three trips to the State of North Carolina to observe my recycling operation, to purchase a system from me, to obtain training as to how to operate the system, and to freight the system to the State of Missouri where I am informed and believe he conducts his business."

Wilkinson further states that about a year later, Ayers contacted him to "obtain information on a larger system that [Wilkinson] had developed and to inquire as to the capacity and operation of said system[;]" that Wilkinson "did not solicit the contact by Mr. Ayers" or "advertise the system in the State of Missouri or anywhere else[;] and that the contact from Mr. Ayers was at his sole initiation."

Wilkinson also sets out that he had "several discussions as to his request for me to construct a new filtration system for him[;]" an agreement was reached for the construction of a filtration system for Appellant; "said agreement and contract was entered into orally over the telephone[;] ... [and] the paper writing which was prepared and sent to Mr. Ayers was a recitation of the oral contract entered into by Mr. Ayers and myself in the State of North Carolina pursuant to his telephone calls to me." Furthermore, Wilkinson sets out that Ayers informed him that he could not come to North Carolina to be retrained on the equipment "and arrange [sic] for the shipping of same, and Mr. Ayers re-

quested that the equipment be shipped to him directly."

■ "In order for a non-resident defendant to subject itself to the long-arm jurisdiction of this state, two elements must be present." *Chromalloy American Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 4 (Mo. banc 1997). "First, the suit must arise out of the activities enumerated in the long arm statute; second, the defendant must have sufficient minimum contacts with Missouri to satisfy due process requirements." *Id.* "We must construe broadly the 'transaction of business' element in the long arm statute so that even a single transaction may confer jurisdiction, if that is the transaction that gives rise to the suit." *Id; see also State ex rel. Nixon v. Beer Nuts, Ltd.*, 29 S.W.3d 828, 834 (Mo.App.2000).

■ Furthermore, a "defendant must have sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Chromalloy American*, 955 S.W.2d at 5 (quoting *Dillaplain v. Lite Industries, Inc.*, 788 S.W.2d 530, 534 (Mo.App.1990)). "This 'minimum contacts' test is not susceptible of mechanical application; rather, 'the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.'" *Id.* (quoting *Dillaplain*, 788 S.W.2d at 534). "A defendant's contacts with the forum state must be purposeful and such that defendant should reasonably anticipate being haled into court in the forum state." *Id.*[4]

■ We determine the court has personal jurisdiction over Respondent pursuant to Missouri's long-arm jurisdiction statute.

---

4. In determining the existence of sufficient minimum contacts, consideration must be given to the nature, quality and quantity of

contacts with Missouri; the relationship of the cause of action to those contacts; the interest of Missouri in providing a forum for

■ As the name implies, long-arm statutes are "intended to expand the reach of the law of the state to authorize jurisdiction over foreign corporations that are not necessarily authorized to do business in the state but whose activities justify personal jurisdiction." *State ex rel. K–Mart Corp. v. Holliger,* 986 S.W.2d 165, 168 (Mo. banc 1999).

Here, Respondent purposefully availed itself of conducting business activities within Missouri. *Beer Nuts Ltd.,* 29 S.W.3d at 835. After a moderately lengthy negotiation process with Appellant, which was negotiated partially in Missouri via phone and facsimile communications between the parties, Respondent agreed to deliver to Appellant an antifreeze reprocessing unit in the State of Missouri for the consideration set out in the contract. Appellant wrote the check for initial payment of $15,000.00 and sent it to Respondent. As part of the contract's terms, Respondent also agreed to "send a truck to pick up" Appellant's unit in Nixa, Missouri and "deliver the new unit back to Nixa, Mo. when it is completed." All of the foregoing acts were accomplished in accordance with the terms of a contract that was finalized in the State of Missouri, when Appellant's President accepted the terms of the contract and affixed his signature to the document on December 13, 2001. *See Hughes v. Balemaster, Inc.,* 652 F.Supp. 1350, 1352 (E.D.Mo.1987) (sale and delivery of bailing machine to customer in Missouri resulted in personal jurisdiction under Missouri law); *see also Laser Vision Centers, Inc. v. Laser Vision Centers International,* 930 S.W.2d 29, 32 (Mo.App.1996).

Jurisdiction in these circumstances may not be avoided merely because Respondent's officers did not *physically* enter

Missouri. *Health Related Services, Inc. v. Golden Plains Convalescent Center, Inc.,* 705 S.W.2d 499, 507 (Mo.App.1985). We recognize territorial presence frequently enhances a defendant's affiliation with a state and reinforces the reasonable foreseeability of suit there. However,

> it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)).

■ By the action of its chief officer, Respondent placed itself within reach of Missouri's long arm statute. *Laser Vision Centers, Inc.,* 930 S.W.2d at 32. "[A] nonresident who purposefully acts to form a substantial connection with the forum state may expect as a matter of fairness to respond in the courts of that state." *Health Related Services, Inc.,* 705 S.W.2d at 506; *see also Chromalloy American,* 955 S.W.2d at 5. Point One is well taken.

The judgment of the court is reversed and the matter is remanded for further proceedings.

PREWITT and GARRISON, JJ., concur.

its residents; and the convenience and inconvenience to the parties. *Farris,* 936 S.W.2d at

201.