Raymond MOORE, Appellant,

v.

John A. PELZER, Commissioner, Office of Administration, Respondent.

No. WD 37403.

Missouri Court of Appeals, Western District.

April 22, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 22, 1986.

Mary Ann Drape, Kansas City, for appellant.

Margaret K. Landwehr, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and PRITCHARD and TURNAGE, JJ.

MANFORD, Presiding Judge.

This appeal follows the entry of a circuit court judgment which reversed a decision of the Missouri Personnel Advisory Board. The judgment is affirmed.[1]

A sole point is presented which, in summary, charges the Missouri Personnel Advisory Board erred in upholding appellant's dismissal because the letter of dismissal, required by § 36.380, RSMo 1978, failed to sufficiently set forth the reason of said dismissal which in turn denied appellant

---

1. This cause was originally styled *Moore v. Bradford.* Pursuant to Rule 52.13, John A. Pelzer, Commissioner, Office of Administration has been substituted for Stephen Bradford.

the opportunity to prepare a defense and allow him to meet the issues on appeal of that decision.

Because of the disposition herein, the issue presented by appellant's alleged error is neither reached nor ruled.

The facts pertinent to disposition of this matter are as follows:

In September, 1973, the Missouri Personnel Division advertised the position of Director, Division of Contracting and Procurement.[2] This position and agency were within the Office of Administration. Applicants for the position included appellant who, upon meeting the qualifications, was selected. Appellant was originally appointed Director, Division of Contracting and Procurement on January 7, 1974. The record is not clear as to why, but appellant did not commence his new duties until February 4, 1974. On this date (February 4), because the position was then within the State Personnel Law, Chapter 36, (commonly named the merit system and hereinafter so referenced) appellant began a six-month probationary period. This probationary period was also prescribed by Rule 10.2 of the Rules and Regulations promulgated by the Personnel Advisory Board[3]. Appellant undertook the duties of his new position. Under the merit system, at the time of initial employment, an employee such as appellant is considered or titled a classified employee in a merit agency. At the conclusion of the six-month probationary period, an employee is considered or titled a regular employee or an employee having a regular appointment. Appellant's status as a regular appointee or employee, all else being satisfactory, would have occurred on August 4, 1974[4].

The Missouri Legislature, in the First Special Session, Seventy-Seventh General Assembly, enacted House Committee Substitute for House Bill No. 8 (H.C.S.H.B. 8) and the same was approved on February 21, 1974. H.C.S.H.B. 8 became effective on May 2, 1974 pursuant to Article III, § 29 of the Missouri Constitution.

The pertinent portion of H.C.S.H.B. 8 reads as follows:

36.030. Personnel administration on merit system-examinations-departments affected-employee suggestions, awards authorized.–1. A system of personnel administration based on merit principles and designed to secure efficient administration is established for all offices, positions and employees of the division of welfare, the division of health, the division of mental health, the state department of corrections, the personnel division and other divisions and units of the office of administration, the division of employment security of the department of labor and industrial relations, the division of industrial inspection, the tourism commission, the board of probation and parole, the board of training schools, and such other agencies as may be required to maintain personnel standards on a merit basis by federal law or regulation for grant-in-aid programs, except that the following offices and positions of these agencies *are not subject to this law and may be filled without regard to its provisions:*

\* \* \* \* \* \*

(10) *Notwithstanding the provisions of section 26.300, RSMo, the director of the division of design and construction, the director of the division of contracting and procurement, the director of the division of the budget, and the director of the division of accounting in the office of administration.* (emphasis added)

From the above, it is noted that the Director, Division of Contracting and Procurement, was thus exempted from the merit system. Also, it is noted that enact-

---

2. This Division was renamed and remains known as the Division of Purchasing.

3. Said rule can be found in 1 CSR 20–3.040.

4. *See* § 1.020(9), RSMo Supp.1984, wherein a month is defined as a calendar month unless otherwise expressed within an applicable statute. Chapter 36 does not define the term "month", so § 1.020(9) applies.

ment of H.C.S.H.B. 8 referenced the then departmental title which, as noted above, was later renamed the Division of Purchasing. The effective date of exemption for appellant as Director of Contracting and Procurement (now Division of Purchasing) from the merit system was May 2, 1974.

Thus, while appellant was still a classified appointee or employee and had not reached the status of a regular appointee or regular employee, his position, by an act of the Missouri General Assembly, was exempted from the Missouri Personnel Law (merit system) [5].

On May 2, 1974, the Office of Administration, by memorandum directed to the Director of Personnel, requested the change of appellant's position to the status of unclassified. This request was approved on May 20, 1974. This request was made pursuant to the provisions of H.C.S.H.B. 8. Thus, on May 20, 1974, appellant's position became unclassified.

On or about June 25, 1974, the Commissioner of Administration (then Robert L. James) filed a Departmental Plan in accordance with § 1.6(2) of the Omnibus State Reorganization Act of 1974. Section 1.6(2) reads as follows:

(2) Unless otherwise provided by this act, the head of each department is authorized to establish the internal organization of the department and allocate and reallocate duties and functions to promote economic and efficient administration and operation of the department. A department plan shall be developed by the head of each department and approved by the governor in accordance with the transfer by type provided in this act. A plan of such organization with any subsequent changes shall be filed with the secretary of state in the manner in which administrative rules are filed and copies of the plan shall also be filed with the commissioner of administration and revisor of statutes and such plans

shall be published in an appendix to the revised statutes of Missouri and supplements to the revised statutes. Plans shall be filed before June 30, 1974, for the initial reorganization, and shall be effective when filed, unless the plan provides otherwise. Thereafter, any plan of reorganization shall be filed on or before December thirty-first of each year and shall become effective, as applicable to departments, divisions, agencies, boards, commissions, units or programs transferred by type II or type III transfers as provided in this act, only as provided in sections 26.500 to 26.540, RSMo, except as herein provided in subsections 12 and 13 of section 1. The plan shall provide for the level of compensation for division and other administrative positions, subject to appropriations therefor. The head of any department may cooperate with the head of any other department in the interchange of personnel, joint use of equipment and generally in any manner promoting the more effective and efficient rendering of service. The purpose of appropriations made to any department in the executive branch of government shall not be altered without the prior approval of the fiscal affairs committee and the concurrence of the commissioner of administration.

While the parties herein do not dispute the filing of the Departmental Plan, they differ as to interpretation and effect which is discussed infra.

Appellant received a letter under date of November 3, 1975 from the Commissioner of Administration, J. Neil Nielsen. The pertinent portion of that letter reads:

Effective January 1, 1976 your salary will be $26,040.00. This amount is in keeping with our policy of making the salaries of unclassified employees equivalent to a step in the merit system pay plan.

---

5. H.C.S.H.B. 8 was codified in § 36.030, RSMo 1978. Subsequent revisions were enacted, but none altered or revised the exemption of the Director of Contracting and Procurement (now Division of Purchasing) from the Missouri Personnel Law (merit system). *See* § 36.030.1, RSMo 1978, § 36.030.1, RSMo Supp.1984, and § 37.010.3, RSMo 1978.

Respondent asserts the foregoing establishes that the Office of Administration recognized appellant as an unclassified employee. There is nothing upon the record which reveals any verification that appellant satisfactorily completed his probationary period or that the employment of appellant would continue.

On March 10, 1981, the Commissioner (then Stephen Bradford), by letter, placed appellant on "administrative probation." This action was based upon appellant's being expected to correct six management deficiencies within a ninety-day period. By deposition, Bradford stated that appellant did not correct the deficiencies or act in a satisfactory manner to resolve problems within the Division. On June 12, 1981, appellant was notified by letter from Bradford that he was dismissed as Director of Purchasing effective June 30, 1981.

On July 10, 1981, appellant filed his application of appeal to the Personnel Advisory Board. In response, the Commissioner of Administration, respondent, moved to dismiss the appeal on the basis that the Board did not have jurisdiction to hear or dispose of the appeal. On September 15, 1981, the Board notified all parties that the Board would conduct a hearing on the matter on October 22, 1981. Respondent sought writs of prohibition from the circuit court, court of appeals, and the Missouri Supreme Court. All three tribunals denied the petitions for writs.

A hearing was held on June 16, 1983, and the Board issued its findings of fact, conclusions of law, decision, and order. The Board concluded it had jurisdiction and then affirmed the dismissal of appellant.

Appellant filed his petition for review in the Circuit Court of Cole County. The circuit court reversed the decision of the Board, ruling that the Board was without jurisdiction to hear and decide appellant's appeal. This appeal followed.

At this state of the proceedings, appellant challenges the decision of the Board stating that the letter of dismissal required by § 36.380 failed to sufficiently set forth the reasons for appellant's dismissal.

As noted above, the issue presented by appellant's alleged error is neither reached nor ruled herein. The basis for that determination is this court's finding and decision that the Personnel Advisory Board was without jurisdiction to hear or rule appellant's appeal.

Before setting forth the rationale upon which the decision herein is based, consideration must be given as to the dispute occasioned by the Departmental Plan mentioned above. In that Plan, the following is found:

### SALARY SCHEDULE

| Position Title | Salary Range |
| --- | --- |
| Commissioner | $ 30,000 |
| Director, Division of Accounting | $18,432–24,564 |
| Director, Division of Budget | $18,432–24,564 |
| Director, Division of Design & Construction | $18,432–24,564 |
| Director, Division of EDP Coordination | $18,432–24,564 |
| Director, Division of Personnel | $18,432–24,564 |
| Director, Division of Purchasing | $18,432–24,564 |
| Director, Division of State Planning & Analysis | $18,432–24,564 |
| Administrative Assistant | $10,920–15,228 |

(1) Merit system salary ranges; incumbents hold merit system status although positions subsequently exempted by law or executive order.

(2) Merit system salary ranges; positions exempted by law or executive order; incumbents do not have merit system status however merit system ranges are used to promote uniformity in salary administration.

Appellant seizes upon the foregoing language which says, "Merit system salary ranges; incumbents hold merit system status although positions subsequently exempted by law or executive order." From that language, coupled with the fact that the above Plan, including the further quoted language, was approved by the Governor and became effective, appellant argues it was declared and he thus remained an incumbent merit system employee.

There is no explanation of the above language, and of course the parties herein offer up contrary interpretations of its intent and effect. One might choose to interpret the above-quoted language as merely a reference to salary schedules for and applicable to the listed positions. This approach seems inadequate to resolve the

more basic question presented. The basic question is really two-fold and can be stated: Is the Plan, or for that matter any such plan, even inclusive of the above language to be given the effect of law, and if so, does such a plan supercede any previous statute enacted by the Missouri General Assembly? To put this in perspective, H.C. S.H.B. 8 specifically exempted the position of Director of Contracting and Procurement from the State Personnel Law (merit system). Subsequent revisions did not repeal, amend, or otherwise modify that exemption. The quoted language from the plan purports to retain that position within the merit system.

This court is not unmindful of § 26.530, RSMo 1978, which reads as follows:

**26.530. Approved plan to have effect of law, published how**

A reorganization plan not disapproved by one or the other house of the legislature in the manner set forth in section 26.510 shall be considered for all purposes as the equivalent in force, effect and intent of a public act of the state upon its taking effect by executive order as set forth in section 26.510, and it shall be published together with the laws adopted by the general assembly at the session in which the plan is submitted.

There is no question herein that the above Plan became effective. This court is therefore required to answer the above question, along with consideration of § 26.-530.

■ The above referred-to Plan is derivative of the Reorganization Act of 1974. It therefore follows that any such Plan must be in conformity to and not contrary to the Reorganization Act of 1974. It is also obvious that the Missouri General Assembly, in its enactment of H.C.S.H.B. 8, intended to exempt certain job positions from the State Personnel Law (merit system) in contemplation of the reorganization of state government. Thus, the Plan herein, or for that matter any such plan, must be in conformity to and not contrary to any statute passed by the Missouri General Assembly.

Our state constitution provides for the style of laws for our state wherein in Article III, § 21, the following is declared:

The style of laws of this state shall be: 'Be it enacted by the General Assembly of the State of Missouri, as follows.' No law shall be passed except by bill, and no bill shall be so amended in its passage through either house as to change its original purpose. Bills may originate in either house and may be amended or rejected by the other. Every bill shall be read by title on three different days in each house.

■ Thus, it cannot, by any interpretation, be concluded that the Plan herein or any such plan ever attains the status of a law within the meaning of Article III, § 21. This same principle applies to any Executive Order by the Governor in approval of any such plan. Thus, where any plan or any particular provision within such a plan is contrary to or conflicts with any constitutional or statutory authority, the offending provision, if severance of such provision is possible, is declared null and void; and if any such plan, in its entirety, be contrary to or in conflict with any constitutional or statutory provision, the entire plan shall be null and void.

■ It might be asked, does § 26.530 transform such plans into law as that term is used within Article III, § 21? The answer is simply no. It is obvious that the Missouri General Assembly, in enacting § 26.530, intended such plans to become effective after approval for the express purpose of implementing the proposals contained within such plans without the necessity of further action by the General Assembly. Section 26.530 does not declare such plans to be law, but rather, it says such plans shall be "considered for all purposes as the equivalent in force, effect, and intent of a public act ..." Thus, § 26.530 intends that such plans as they become effective shall, without further legislative action, implement and supplement the reorganization of our state government.

■ The Missouri General Assembly is prohibited from delegating its powers

granted under Mo. Const. Art. III, § 1 (1945) as to the enactment of laws. *See City of St. Joseph v. Hankinson*, 312 S.W.2d 4, 7 (Mo.1958); *City of Springfield v. Clouse*, 356 Mo. 1239, 206 S.W.2d 539, 545 (banc 1948), and *see e.g. Baumli v. Howard County*, 660 S.W.2d 702, 704 (Mo. banc 1983). Hence, § 26.530 must be and is hereby construed to be a statute declaring that such plans shall have the effect of law but shall not be a law within the meaning of Article III, § 21. To hold otherwise would require the courts to declare § 26.-530 null and void as a violation of Article III, § 1 as the product of a prohibited delegation of legislative power. Stated another way, if § 26.530 were construed to provide that such plans were laws within Article III, § 21, then the various agencies of the executive branch, by way of such plans supported by executive orders, would in effect enact laws for our state which, by our constitution, is a power reserved only to the General Assembly.

The above Plan, or any such plan, shall remain subject to the provisions of any constitutional and statutory authority, and wherein any such plan in its entirety or any portion thereof, which is severable, is contrary to or in conflict with any constitutional or statutory authority, such plan or severable portion thereof shall be null and void.

■ Applying the above principle and rule to the language within the Plan herein, the following language, "(1) Merit system salary ranges; incumbents hold merit system status although positions subsequently exempted by law or executive order," is declared null and void as being contrary to and in conflict with the expressed language within H.C.S.H.B. 8 as codified, because said language declares the Director, Division of Purchasing to be an incumbent merit system employee.

■ One more issue needs to be addressed herein. During the course of this litigation, respondent, on three occasions, sought a writ of prohibition and each attempt concluded with the denial of respondent's request. Appellant asserts that these denials constituted litigation of and the determination of his status as a merit employee. Attending to this appellant now argues that any defense by respondent on his employee status is res judicata.

Appellant's argument is without merit. It has been ruled that the denial of a writ of prohibition does not necessarily reflect any view by the court relative to the merits of a cause. *Estate of Sympson*, 577 S.W.2d 68, 71 (Mo.App.1978).

The mere denial of a writ of prohibition does not constitute a decision upon the merits. Res judicata is not applicable as an affirmative defense under such circumstances.

In summary, appellant commenced his employment with the state as a probationary merit employee on February 4, 1974. He would not have become an employee with a regular employment or appointment until August 4, 1974. The Missouri General Assembly enacted H.C.S.H.B. 8 which, by its provisions, exempted or removed appellant from further participation in the merit system because his employment position was exempted from the merit system. It should be noted that while appellant had not completed his probationary status that is not of any concern anyway because even if appellant or anyone so situated had obtained status as a regular employee or regular appointee, and unless the General Assembly in its enactment of any applicable statute provided for the continuation of the merit status, the same would be abolished, as was the case herein.

As noted above, the Plan, with the express language set forth, is not a law within the meaning of Article III, § 21. Furthermore, said Plan is not a law within the meaning of § 26.530 because to hold otherwise would be to hold that the General Assembly improperly delegated its legislative powers.

Any reorganization plan, or any part thereof which is severable and which is contrary to or in conflict with any constitutional or statutory provision, must yield to the constitutional and statutory provisions

and the same is null and void. Such is the case with the quoted language herein.

Because the position of appellant as Director of Contracting and Procurement (now Director of Purchasing) was exempted by enactment of H.C.S.H.B. 8, he had no standing to appeal his dismissal to the Personnel Advisory Board, nor did the Personnel Advisory Board ever acquire jurisdiction to hear appellant's dismissal appeal.

The learned trial court was absolutely correct in reversing the decision of the Personnel Advisory Board on the basis that the Personnel Advisory Board did not have jurisdiction in the matter.

Judgment affirmed.

All concur.