**PACIFIC FIRE PROTECTION DISTRICT, Plaintiff/Appellant,**

v.

**Jack MOSLEY, Defendant/Respondent.**

No. 70071.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 24, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 19, 1997.

Application to Transfer Denied
March 25, 1997.

Jay E. Sushelsky, St. Louis, for plaintiff/appellant.

Timothy J. Melenbrink, Hansen, Stierberger, Downard & Melenbrink, Union, for defendant/respondent.

CRANE, Presiding Judge.

This appeal presents the issue of whether a trustee under a roadway maintenance agreement whose power to maintain and control the roadway is "subject to the rights of the public authority" may place a chain across the end of a private portion of a roadway where a fire protection district ordinance prohibits chains across roadways within the district and the roadway owner allows the roadway to be used to access other streets in the subdivision. We hold the ordinance may be enforced in this situation. We reverse the trial court's denial of a permanent injunction and remand.

The roadway at issue in this case is Serenity Lane in the Ad Deum Subdivision which is in the Pacific Fire Protection District in Franklin County. The Ad Deum Subdivision was developed by Parnell Menard Corporation ("Parnell Menard") on land that it owned. Parnell Menard first developed Plats One and Two of the subdivision which consisted of four lots on each side of Serenity Lane. Serenity Lane was accessed by the North Service Road on the south and originally ended in Parnell Menard's undeveloped land to the north. Parnell Menard intended Serenity Lane to be a through street to the rest of the property which Parnell Menard owned and planned to develop.

In August, 1986 Parnell Menard, as owner, executed a Roadway Maintenance Agreement ("Maintenance Agreement") with respect to Plats One and Two to provide for the maintenance of private roadway easements. The roadway easements are not part of the record.

The Maintenance Agreement designates three trustees and confers certain powers on them, including the following:

To exercise control over the roadway easement ... and any other non-public items, if any, on [plats one and two] for the purpose of maintaining, repairing, and rebuilding and insuring the proper use of the roadway easement, subject to the rights of the public authority and the holders of the easements thereon.

Parnell Menard sold all eight lots in Plats One and Two, at which time roadway maintenance of that part of Serenity Lane which lies between Plats One and Two passed to the trustees designated by the Maintenance Agreement. The trustees, exclusively, have maintained and repaired the section of Serenity Lane which runs through Plats One and Two since the sale of the last lot in Plats One and Two.

Eventually, Parnell Menard developed Plats Three through Six of the Ad Deum Subdivision, which contain 130 to 140 single family houses. Parnell Menard extended Serenity Lane to the north into this subdivision, where it crosses Wisdom Lane and ends at Gregory Drive. Parnell Menard intended that Serenity Lane provide access to the rest of the subdivision and Serenity Lane was in fact open to through traffic. The northern extension of Serenity Lane and the other streets of the Ad Deum Subdivision are maintained by those homeowners in a separate association. The difference between the two homeowners' groups is that the lots in Plats Three through Six also maintain a common sewer service.

Parnell Menard originally owned all of the property developed. It deeded lots to the home buyers, but retained ownership of the roadways. It has not consented to barriers being placed across Serenity Lane.

The Ad Deum Subdivision lies within the boundaries of the Pacific Fire Protection District and receives fire protection services from the District. The Pacific Fire Protection District is a political subdivision of the State of Missouri, organized and existing pursuant to Chapter 321 RSMo. In 1994, the District enacted Ordinance 94–33, its fire prevention code. Section F–316–0 is titled "Streets" and contains regulations which apply to both dedicated and private (non-dedi-

cated) streets, roads, highways or public thoroughfares. Subsection F–316.4 of this section states:

No person or persons shall erect, constr[u]ct, place or maintain any fences, gates, chains, pipes, wood, metal horses, speed bumps or any other type of obstruction in or on any street, road, lane or public thoroughfare at any location within the fire protection district and/or any municipality serviced by the fire protection district.

The defendant, Jack Mosley, purchased lot four on Plat One on Serenity Lane in 1990. On July 1, 1995, Mosley placed a chain or cable extending from lot four to lot five across Serenity Lane at the northern end of Plats One and Two. Mosley, a trustee of the Ad Deum Subdivision Plats One and Two pursuant to the Maintenance Agreement, testified that he was acting on behalf of the trustees in barricading the road. He testified that Serenity Lane was open the entire time he lived there and that it was used by passenger cars, school buses, construction trucks, and garbage trucks. He testified that he erected the barricade because of problems with the open access, including speeding traffic, unsafe driving, fatal injuries to pets, and vandalism to the mailboxes.

Richard Friedmann, Chief of the Pacific Fire Protection District, sent a letter to Mosley which informed him that the barricade violated Ordinance 94–33 and asked that it be removed immediately. Mosley requested and was granted a hearing, but the District Board denied his request for a variance. He refused to remove the chain.

On July 19, 1995, the District filed a petition for temporary restraining order, preliminary injunction and permanent injunction alleging that the barrier violated Section F–316.4 of Ordinance 94–33. Specifically, the District claimed that the barrier was hazardous since it blocked the most direct route into the Ad Deum Subdivision, thereby impeding the District's ability to provide fire and other emergency services to the subdivision, and that it cut off access to one of two fire hydrants in the subdivision. The trial court granted a temporary restraining order on July 19, 1995 and preliminary injunction

on September 29, 1995. It ordered Mosley to remove the chain across Serenity Lane and enjoined him from erecting any other type of barrier. Mosley complied with both the temporary restraining order and preliminary injunction.

On January 30, 1996, the court entered a judgment dissolving the temporary restraining order and preliminary injunction and denied the permanent injunction. It denied the injunction on the grounds that the portion of Serenity Lane between Plats One and Two was a private roadway and the ordinance deprived the owners of lots one through eight of Plats One and Two of property rights without adequate compensation. It found that the lot owners' rights in controlling Serenity Lane outweighed the District's interest in access to the subdivision because the fire department could access the rest of the subdivision and the remaining portion of Serenity Lane by using Wisdom Lane.

On appeal the District argues that the ordinance is a valid exercise of the police power and enforcement of the ordinance does not infringe any protected right of Mosley since Mosley is not an owner of Serenity Lane. We find the trial court misapplied the law in denying the injunction.

A fire protection district is a political subdivision organized and empowered to supply protection by any available means to persons and property against injuries and damage from fire and fire hazards. *Easy Living Mobile Manor, Inc. v. Eureka Fire Pro. Dist.,* 513 S.W.2d 736, 738 (Mo.App. 1974); § 321.010 RSMo 1994. Fire prevention is within the police powers of the state, which powers the state may confer on a municipal corporation. *Easy Living,* 513 S.W.2d at 738; *R.A. Vorhof Const. v. Black Jack Fire Pro. Dist.,* 454 S.W.2d 588, 594 (Mo.App.1970). The board of directors of a fire protection district has the power to adopt "fire protection and fire prevention ordinances, and any other rules and regulations not in conflict with the constitution and laws of this state, necessary for the carrying on of the business, objects, and affairs of the board and of the district...." § 321.600(12) RSMo 1994. The power of a fire district may be

exercised within wide limits of legislative discretion. *Easy Living*, 513 S.W.2d at 738; *Wellston Fire Protection Dist. v. State Bank & Trust Co.*, 282 S.W.2d 171, 176 (Mo.App. 1955). If a fire district ordinance appears to be within the apparent scope of this power, the courts accord the ordinance a presumption of reasonableness and a court will neither inquire into the wisdom of the grant of power nor substitute its discretion for that of the legislature. *Easy Living*, 513 S.W.2d at 738–39. *See also*, 3A Antieau's Local Government Law § 30D.03.

■ As a general rule, a municipal corporation, in the exercise of its police power, may make regulations with respect to private property within its borders, provided the regulations are reasonable and bear a substantial relation to the preservation of the public health, safety or welfare. 62 C.J.S. Municipal Corporations § 149. A valid exercise of the police power is not a taking of private property for public use. *State v. Public Service Commission*, 369 S.W.2d 572, 575 (Mo.1963).

■ An attorney general's opinion has determined that a fire district may require removal of obstructions in the private streets in the district which are open to the public. *Schramm*, Op.Atty.Gen. 214 (1968). The question to the attorney general in *Schramm* advised that a fire district had a problem with "so-called private streets, although open to the public" which contained obstructions which interfered with fire fighting equipment. It sought advice on whether the fire district could order the obstructions removed. The opinion responded that in light of the "broad rule-making powers granted to fire protection districts for the purposes mentioned in [§ 321.220(12) RSMo] it is believed the board of directors of the Creve Coeur Fire Protection District may, within their discretion, enact an ordinance requiring the removal of obstructions in the streets within the district, including all public streets and so-called private streets open to public use." *Id.* We recognize that an opinion of the Attorney General is not binding upon the

courts or the citizenry, but it may be, and often is, persuasive. *Mesker Brothers Industries, Inc. v. Leachman*, 529 S.W.2d 153, 158 (Mo.1975).

■ Mosley does not challenge the reasonableness of the fire district ordinance but contends it does not apply to him because Serenity Lane is a private road and the Fire District may not obtain an injunction compelling it to be opened to the public or dedicating it to public use.

In this case the southern portion of Serenity Lane is a private roadway, maintained by the trustees. However, the owner has allowed it to be used to access the northern extension of Serenity Lane and the other streets of the subdivision. The owner, Parnell Menard, extended Serenity Lane to serve as a through street to Plats Three through Six of the Ad Deum Subdivision. It has not consented to the erection of any barricades across Serenity Lane.[1]

The trustees' interest in Serenity Lane derives solely from the Maintenance Agreement which Parnell Menard executed as owner for the purpose of providing maintenance to the private roadway easements. The Maintenance Agreement designated trustees and invested them with authority to exercise control of the roadway "for the purpose of maintaining, repairing, and rebuilding and insuring the proper use of the roadway easement." It further provides that this authority is "subject to the rights of the public authority."

Mosley's control of Serenity Lane as trustee under the Maintenance Agreement is limited by the Maintenance Agreement. The owner specifically made that control subject to the public authority, which in this case includes the fire district. The Maintenance Agreement does not give Mosley the power to obstruct Serenity Lane with a chain where a fire protection district ordinance bars that action. The District may properly enforce its ordinance with respect to Mosley's placement of a chain placed across Serenity Lane.

1. Because no easement agreements were a part of the record, we do not know what they provide or what rights they convey to whom. This case is being decided without reference to any easement.

The judgment of the trial court is reversed. The case is remanded for entry of judgment in favor of the Pacific Fire Protection District.

GERALD M. SMITH and PUDLOWSKI, JJ., concur.