**In re the Matter of STATE of Missouri ex rel. DEPARTMENT OF SOCIAL SERVICES, FAMILY SUPPORT DIVISION, et al., Appellant,**

v.

**K.L.D., Respondent Pro Se,**

**R.A.D., Respondent Pro Se.**

**No. WD 63303.**

Missouri Court of Appeals, Western District.

Oct. 28, 2003.

1. All statutory references are to RSMo 2000, unless otherwise indicated.

Ronald Molteni, Assistant Attorney General, Jefferson City, MO, for appellant.

K.L.D., Independence, pro se.

R.A.D., Kansas City, pro se.

Before JOSEPH M. ELLIS, Chief Judge, PATRICIA BRECKENRIDGE, Judge and THOMAS H. NEWTON, Judge.

JOSEPH M. ELLIS, Chief Judge.

The State of Missouri, Department of Social Services, Family Support Division ("FSD") appeals an order and judgment of the Circuit Court of Jackson County dismissing, without prejudice and on the court's own motion, FSD's petition for a declaration of paternity under the Missouri Uniform Parentage Act and an order of support on the grounds that FSD lacked standing to file such a petition.[1] After reviewing the record and the law, we reverse and remand.

**FACTS AND PROCEDURAL HISTORY**

On February 6, 2003, the Governor of the State of Missouri submitted Reorganization Plan No. 1 of 2003 ("the Plan") to the legislature via Executive Order 03–02 ("the Order"), both of which were simultaneously transmitted to each house of the 92nd General Assembly.[2] For the reasons set forth in its introductory "whereas" clauses,[3] the Order established the Family Support Division within the Department of Social Services and commanded the Department to "[t]ransfer all authority, powers, duties, functions, records, personnel, property, contracts, budgets, matters pending, and other pertinent vestiges of the Division of Child Support Enforcement to the Family Support Division, except the parents' fair share program, by Type I transfer, as defined under the Reorganization Act of 1974." The Secretary of State attested to the Governor's signature. By its terms, the Order stated that it "shall become effective no sooner than August 28, 2003 unless disapproved within sixty days of its submission to the First Regular Session of the 92nd General Assembly."

On September 9, 2003, FSD filed, in the Circuit Court of Jackson County, a petition for declaration of paternity under the Missouri Uniform Parentage Act and an order of support. The purpose of the petition was to establish the paternity of a minor child and to establish an order for that child's support. On September 10, 2003, the circuit court issued an order and judgment ruling that the "Family Support Division is without standing to file" the paternity action because it "has not been granted statutory authority by the legislature to file [such] actions pursuant to § 210.826, RSMo, or to act as next friend for the minor child pursuant to § 210.830, RSMo."[4] The court's order and judgment also provided that "Executive Order 03–02, by reference to the Reorganization Act of

---

1. The petition alleges that respondents R.A.D. and K.L.D. are, respectively, the natural father and mother of the minor child on whose behalf payment of child support by R.A.D. was sought by FSD. Neither is represented by counsel of record, and neither filed a brief in this appeal.

2. The full text of the Plan and the Order is provided in an appendix to this opinion. Because the Order contains all the salient details of the Plan, we will often collectively refer to these two documents as simply "the Order."

3. Among others, those reasons are "to integrat[e] executive branch operations to improve the way the state delivers services" and "to streamline state government and make it as efficient as possible."

4. These statutory references, as well as the others made throughout this opinion, are to RSMo 2000.

1974, does not transfer standing to the Family Support Division." The court dismissed the petition without prejudice, but stayed the operation of its judgment for ten days "to allow the Family Support Division to file such actions as deemed necessary."

The State of Missouri, by and through the Office of the Jackson County Prosecuting Attorney, filed a Petition for Writ of Prohibition, or in the Alternative for Writ of Mandamus in this court on September 10, 2003 (case number WD63275). On September 12, 2003, the State substituted the Attorney General's Office as its counsel and supplemented its suggestions in support of that writ. On September 15, 2003, we summarily denied the writ petition, noting that "an adequate remedy at law exists." This appeal followed, and we subsequently authorized the Jackson County Court Administrator's Office ("Court Administrator") to file a brief and present argument as *amicus curiae*.[5]

## JURISDICTION

"A reviewing court has a duty to determine its jurisdiction *sua sponte*." *Chromalloy Am. Corp. v. Elyria Foundry Co.*, 955 S.W.2d 1, 3 (Mo. banc 1997). Under normal circumstances, an order dismissing a petition without prejudice does not constitute a final judgment and is not appealable. *Id.* However, "[a] dismissal without prejudice may operate to preclude [a] party from bringing another action for the same cause and may be *res judicata* of what the judgment actually decided." *Id.* "Thus there may be cases in which it is essential to appeal from such a judgment to prevent loss of rights." *Douglas v. Thompson*, 286 S.W.2d 833, 834 (Mo.1956).

Accordingly, an appeal from a dismissal without prejudice may be taken where the dismissal has the practical effect of terminating the litigation in the form cast by the plaintiff, *Chromalloy*, 955 S.W.2d at 3, or, to put it another way, was such that refiling of the petition at that time would have been a futile act. *Masonic Temple Ass'n of St. Louis v. Soc'y for Pres. of Masonic Temple*, 70 S.W.3d 24, 26 (Mo.App. E.D.2002). The dismissal here had the practical effect of terminating the litigation in the form cast by FSD. For FSD to re-offer the same rejected claims in support of its contention that after the effective date of the Order, FSD had standing to file paternity actions and to act as next friend for minor children as the basis for a new claim that it had such standing and authority "would be an exercise in futility." *Chromalloy*, 955 S.W.2d at 4; *Masonic Temple Ass'n*, 70 S.W.3d at 26. Therefore the circuit court's judgment is both final and appealable, and we have jurisdiction to hear this case pursuant to Article V, § 3 of the Missouri Constitution, which gives the Court of Appeals "general appellate jurisdiction in all cases except those within the exclusive jurisdiction of the supreme court."[6]

5. On September 16, 2003, FSD filed a motion to expedite its appeal, stay the effectiveness of the underlying order and judgment, and to require the circuit court to accept its filings in unrelated paternity and child support actions during the pendency of this appeal. Neither respondent filed an objection to the motion. The motion was sustained, in part, on September 22, 2003. We also set an expedited briefing schedule.

6. The Court Administrator's brief raises two constitutional issues relating to the Governor's authority to reorganize the Missouri Department of Social Services via executive order. However, that does not deprive this court of original appellate jurisdiction under Article V, § 3, since our preliminary inquiry reveals that these issues are merely colorable, rather than real and substantial. *Pavlica v. Dir. of Revenue*, 71 S.W.3d 186, 190 (Mo.App. W.D.2002); *Rodriguez v. Suzuki Motor Corp.*, 996 S.W.2d 47, 51 (Mo. banc 1999); *see also*

## STANDARD OF REVIEW

 Appellate review of whether a litigant has standing is *de novo*. *Home Builders Ass'n of Greater St. Louis, Inc. v. City of Wildwood,* 32 S.W.3d 612, 614 (Mo. App. E.D.2000); *see also Siefert v. Leonhardt,* 975 S.W.2d 489, 492 & n. 1 (Mo.App. E.D.1998) (applying *de novo* review in appeal from dismissal without prejudice on grounds plaintiffs lacked standing to bring claim). This court determines standing as a matter of law on the basis of the petition, along with any other non-contested facts accepted as true by the parties at the time the motion to dismiss was argued, and resolve the issue as a matter of law on the basis of the undisputed facts. *Home Builders Ass'n of Greater St. Louis,* 32 S.W.3d at 614.

## ANALYSIS

In its sole point on appeal, FSD argues that the circuit court erred in holding that it does not have standing to file actions pursuant to § 210.826 or to act as next of friend for minor children pursuant to § 210.830 in that the Governor had the authority, under §§ 26.500–26.540, to issue the Order, which met all of the statutory requirements governing the issuance of executive orders to implement plans designed to reorganize state executive agencies and thereby effectively and lawfully transferred to FSD nearly all of the authority of the Division of Child Support Enforcement. We agree.

It is clear to this court that the Order was the product of a statutory process which expressly allows the Governor to reorganize state executive agencies such as the Department of Social Services,[7] because §§ 26.500–26.540, which the revisor of statutes has placed under the heading "Reorganization of Executive Agencies," provide the Governor with express statutory authority to reorganize state executive branch agencies via executive order. Section 26.540 defines the scope of executive agency reorganization plans authorized under the statutory framework. It provides, in relevant part, that such plans "shall relate *only* to abolishing or combining agencies in the executive branch of the state government or to changing the organization thereof or the assignment of functions thereto." *§ 526.540* (emphasis added). The Executive Order in this case clearly falls within those bounds.

 Section 26.500 sets forth how the overall reorganization process is to commence: "Within the first thirty days of any regular legislative session, the governor may submit to both houses of the legislature, at the same time, one or more formal and specific plans for the reorganization of executive agencies of state government." *See also Kinder v. Holden,* 92 S.W.3d 793, 808 (Mo.App. W.D.2002) (noting that § 26.500 "authorizes the Governor to submit plans for the reorganization of executive agencies.") The Governor submitted the Plan set out in the Order at the same time to each house of the 92nd General

*Kansas City Star Co. v. Shields,* 771 S.W.2d 101, 103 (Mo.App. W.D.1989) (quoting *State v. Egan,* 272 S.W.2d 719, 725 (Mo.App. S.D. 1954)) (" 'A claim of violation of a constitutional guaranty may be said to be substantial when, upon preliminary inquiry, the contention discloses a contested matter of right, involving *some* fair doubt and reasonable room for controversy; but, if such preliminary inquiry discloses that the contention is so obviously unsubstantial and insufficient,

either in fact or law, as to be plainly without merit and a mere pretense, the claim may be deemed to be merely colorable.' ")

7. The Department of Social Services is an executive branch agency. MO. CONST. art. IV, § 12; MO. CONST. art. IV, § 37; *State ex rel. Mo. Div. of Family Servs. v. Moore,* 657 S.W.2d 32, 34 (Mo.App. W.D. banc 1983).

Assembly on February 6, 2003, which was the seventeenth day of the First Regular Session. *Journal of the Senate*, 92nd General Assembly, First Regular Session at 179, 190–91 (February 6, 2003); *Journal of the House*, 92nd General Assembly, First Regular Session at 273, 280–81 (February 6, 2003).[8]

■ Section 26.510 continues: "A reorganization plan so submitted shall become effective by executive order not sooner than ninety days after the final adjournment of the session of the legislature to which it is submitted, unless it is disapproved within sixty days of its submission to a regular session by a senate or house resolution adopted by a majority vote of the respective elected members thereof." *See Kinder*, 92 S.W.3d at 808 (citing § 26.510) ("A reorganization plan submitted [under § 26.500] would become effective by executive order unless it is disapproved by the legislature.")[9] The records of the General Assembly show that the Order implementing the Plan was not disapproved, by either Senate or House resolution, within sixty days of its submission on February 6, 2003. The First Regular Session of the 92nd General Assembly was finally adjourned on May 28, 2003. *Jour-*

*nal of the Senate*, 92nd General Assembly, First Regular Session at 1713 (May 28, 2003); *Journal of the House*, 92nd General Assembly, First Regular Session at 2197 (May 28, 2003). Applying § 26.510, the Order therefore became effective not sooner than the 90th day thereafter, which was Tuesday, August 26, 2003.[10] By its own terms, however, the Order became effective "no sooner than August 28, 2003," so Thursday, August 28, 2003, was its earliest effective date.

As noted earlier, the Governor submitted the Plan to the legislature via the Order. The Order established the Family Support Division within the Department of Social Services and commanded the Department to "[t]ransfer all authority, powers, duties, functions, records, personnel, property, contracts, budgets, matters pending, and other pertinent vestiges of the Division of Child Support Enforcement to the Family Support Division, except the parents' fair share program, by Type I transfer, as defined under the Reorganization Act of 1974." Section 1, subsection 7(1)(a) of the Omnibus State Reorganization Act of 1974[11] defines a "Type I transfer" as follows:

8. We may take judicial notice of the records of the General Assembly, including those showing the dates on which it convened and adjourned. *State v. Massey*, 358 Mo. 1108, 219 S.W.2d 326, 328 (1949).

9. Section 26.520 lays out the process by which legislative disapproval may be accomplished. It says: "The presiding officer of the house in which a resolution disapproving a reorganization plan has been introduced, unless the resolution has been previously accepted or rejected by that house, shall submit it to a vote of the membership not sooner than ten days or later than sixty days after the submission by the governor of the reorganization plan to which the resolution pertains."

10. This court may take judicial notice of calendars, including the dates on which particu-

lar days of the week fell. *Haller v. Shaw*, 555 S.W.2d 703, 704 (Mo.App. W.D.1977).

11. This statute is quite unusual. It was enacted by the 77th General Assembly, during the First Extraordinary Session of its First Regular Session, to implement the 1972 amendment, by the people of Missouri, of various portions of the Missouri Constitution. *See State ex inf. Danforth v. Merrell*, 530 S.W.2d 209, 210–11 & n. 1 (Mo. banc 1975). Perhaps because it was considered to be implementing or enabling legislation, it has never been assigned a section number within any official statutory compilation since its passage, including RSMo 2000. Instead, it currently appears as "Appendix B" on page 9392 of Volume 15 of RSMo 2000. Moreover, as best we can tell, the text of the statute does not appear in the unofficial statutory compila-

[T]he transfer to the new department or division of all the authority, powers, duties, functions, records, personnel, property, matters pending and all other pertinent vestiges of the existing department, division, agency, board, commission, unit, or program to the director of the designated department or division for assimilation and assignment within the department or division as he shall determine, to provide maximum efficiency, economy of operation and optimum service. All rules, orders and related matter of such transferred operations shall be made under direction of the director of the new department.

As can be seen, the Governor's Order not only declares that it is making a "Type I transfer," the wording of the Order also tracks that of the Act verbatim. This, conjoined with the fact that the Plan and Order procedurally complied with §§ 26.500–26.540, makes it clear that the Governor's intent was to promulgate the Plan and issue the Order under the authority vested in him by §§ 26.500–26.540.

■ From the foregoing, it is apparent that the Plan set out in the Order was specifically authorized by statute and validly promulgated. Likewise, since it became effective on August 28, 2003, it was in full force on Tuesday, September 9, 2003, when FSD filed the petition in the instant case.

We next turn to the impact of the Plan. Section 26.530 specifies the legal effect of a validly-enacted executive reorganization plan, such as the one implemented by the Order in the instant case. It says, in no uncertain terms, that:

A reorganization plan not disapproved by one or the other house of the legislature in the manner set forth in section 26.510 shall be considered for all purposes as the equivalent in force, effect and intent of a public act of the state upon its taking effect by executive order as set forth in section 26.510, and it shall be published together with the laws adopted by the general assembly at the session in which the plan is submitted.

As the executive agency reorganization plan set out in the Order was validly promulgated and specifically authorized by statute, it has the force of law and is enforceable in court proceedings. *§ 26.530; Kinder*, 92 S.W.3d at 806–810.[12]

The Governor specifically excluded "the parents' fair share program" from the transfer effected by the Order. The Parents' Fair Share program is an initiative of the Division of Child Support Enforcement which is designed "to provide employment/training services for noncustodial parents to enable them to meet child sup-

---

tion known as Vernon's Annotated Missouri Statutes, which is published by the West Group. These historical curiosities aside, though, there is no question that the Omnibus State Reorganization Act of 1974 was validly enacted in 1974. *See* 1973–1974 Mo. Laws 530–553. The Act has also been amended several times since then, most recently in 1985. *See* 1977 Mo. Laws 137; 1980 Mo. Laws 231; 1981 Mo. Laws 397, 453; 1982 Mo. Laws 391; 1983 Mo. Laws 285, 465; 1985 Mo. Laws 353.

**12.** We need not and do not decide whether the Governor also has the independent im-

plied constitutional authority to implement an executive agency reorganization plan via executive order under the provisions of Article IV, § 1 ("The supreme executive power shall be vested in a governor.") or Article IV, § 2 ("The governor shall take care that the laws are distributed and faithfully executed, and shall be a conservator of the peace throughout the state.") *Cf. Kinder*, 92 S.W.3d at 806 (noting that an executive order is legally enforceable if there is some constitutional or statutory provision authorizing the order, either specifically or by way of necessary implication).

port obligations," and the Division of Child Support Enforcement's Deputy Director of Operations "is responsible for statewide coordination" of these projects. *13 CSR 30–1.010(2)(C)* (2003).[13] Accordingly, with the sole exception of the Parents' Fair Share program, which at present remains as it was before the Order, we hold that all of the authority, powers, duties, functions, records, personnel, property, matters pending and all other pertinent vestiges of the Division of Child Support Enforcement now lawfully rest with FSD. In other words, as argued by FSD in its reply brief, with that one exception, the Order successfully created FSD within the Department of Social Services and then lawfully authorized FSD to subsume or "step into the shoes" of the Division of Child Support Enforcement. Functionally, the reorganization does not eliminate any service or function prescribed by the legislature, and every substantive element of the Division of Child Support Enforcement's previous operations remains the same.

The Court Administrator makes three basic arguments in defense of the circuit court's ruling. First, the Court Administrator observes that the Division of Child Support Enforcement, not the Family Support Division, is the executive branch agency granted standing by the literal terms of §§ 210.826 and 210.830. That being the case, the argument continues, the Order is ineffective to vest standing in FSD unless and until those two statutes are amended by the General Assembly to explicitly reflect the existence of the newly-created Family Support Division. For this court to hold otherwise, the Court Administrator contends, would violate the constitutional separation of powers doctrine expressed in Article II, § 1 of the Missouri Constitution[14] because "the governor does not have authority to amend the clear wording of statutes. Only the legislative branch may do that." Second, citing cases holding that a bill may not effect amendments by simply substituting one phrase for another found in existing statutes, the Court Administrator argues that even if the Governor *did* have authority to "amend the clear wording of statutes" via executive order, to permit him to do so in this case would run afoul of Article III, § 28 of the Missouri Constitution.[15] Third, citing section 1, subsection 16 of the Omnibus State Reorganization Act of 1974[16] and Senate Bill No. 635, which was

13. This court takes judicial notice of rules and regulations published in the Code of State Regulations. *§ 536.031.5* ("The courts of this state shall take judicial notice, without proof, of the contents of the code of state regulations."); *McClellan v. Dir. of Revenue,* 996 S.W.2d 794, 796 (Mo.App. E.D.1999) ("This section [§ 536.031.5] obligates trial courts to take judicial notice of the code of state regulations with or without any formal request.")

14. Art. II, § 1 states: "The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except

in the instances in this constitution expressly directed or permitted."

15. Art. III, § 28 provides: "No act shall be revived or reenacted unless it shall be set forth at length as if it were an original act. No act shall be amended by providing that words be stricken out or inserted, but the words to be stricken out, or the words to be inserted, or the words to be stricken out and those inserted in lieu thereof, together with the act or section amended, shall be set forth in full as amended."

16. Section 1, subsection 16 of the Act directed the staff of the Committee on Legislative Research to "prepare reorganization-revision bills to be submitted to the eightieth general assembly to revise the statutes so as to reflect the changes made by or pursuant to this act

passed by the Senate during the First Regular Session of the 92nd General Assembly but failed to achieve passage in the House,[17] the Court Administrator contends that the legislature itself recognized that "effective reorganization of executive agencies requires changes in existing legislation, or new legislation," and "clearly anticipated the necessity of legislation accompanying the [Governor's] reorganization plan."

We have no quarrel with the abstract statements of law contained in the Court Administrator's brief. We think, however, that the Court Administrator misunderstands both the effect and the nature of the Order *sub judice.* The Order does not, as contended by the Court Administrator, "amend" §§ 210.826 and 210.830 by substituting the words "family support division" everywhere "division of child support enforcement" appears. In fact, the Order does not even completely abolish the Division of Child Support Enforcement. What it does, as noted previously, is legally vest, with the exception of the Parents' Fair Share program, all of the Division of Child Support Enforcement's authority, powers, duties, functions, records, personnel, property, matters pending and all other pertinent vestiges in the newly-created Family Support Division. Moreover, the Governor accomplished this transfer not by "amending" or "enacting" any Missouri

statute, but by executive order—an executive order which, under the circumstances here, in accordance with § 26.530, "shall be considered for all purposes as the equivalent in force, effect and intent of a public act of the state."

This court's decision in *Moore v. Pelzer,* 710 S.W.2d 416 (Mo.App. W.D.1986), illustrates the subtle but critical distinctions in play here and clearly demonstrates that all three of the Court Administrator's arguments are meritless. In *Moore,* we considered the validity and effect of an executive departmental agency reorganization plan originally filed by the Commissioner of Administration under § 1, subsection 6(2) of the Omnibus State Reorganization Act of 1974. *Id.* at 419. The Governor subsequently approved and implemented that plan by executive order pursuant to §§ 26.500–26.540. *Id.* at 420–21. However, the plan contained a provision which would have placed a particular job position (Director of Contracting and Employment) within the merit system despite the fact that the General Assembly had, by statute, previously exempted or removed that job position from the merit system. *Id.* at 421. Holding that any reorganization plan "must be in conformity to and not contrary to any statute passed by the Missouri General Assembly," we severed the offending

---

and shall, for consideration of the eightieth general assembly, prepare such other reorganization-revision bills as may be found to be necessary to meet the requirements of the amendment to the constitution adopted August 8, 1972, and this act ... At such time as all statutory revision changes required pursuant to this act have gone into effect the revisor of statutes may prepare legislation to repeal this act."

**17.** *See In re Gerling's Estate,* 303 S.W.2d 915, 920 (Mo.1957) (court took judicial notice that, at the General Assembly session just adjourned, a bill had been introduced, and

passed by the Senate, which would have included joint estates within operation of inheritance tax, but that such bill had not passed the other house). Among the statutes which would have been amended by Senate Bill 635 was § 660.010. If that bill had become law, the amended § 660.010.3 would have contained the following new language: "There is hereby established within the department of social services, the family support division. This division shall be responsible for those functions previously assigned to the division of child support enforcement not otherwise transferred in this reorganization ..."

provision, explaining our rationale as follows:

> Our state constitution provides for the style of laws for our state wherein in Article III, § 21, the following is declared:
>
>> The style of laws of this state shall be: 'Be it enacted by the General Assembly of the State of Missouri, as follows.' No law shall be passed except by bill, and no bill shall be so amended in its passage through either house as to change its original purpose. Bills may originate in either house and may be amended or rejected by the other. Every bill shall be read by title on three different days in each house.
>
> Thus, it cannot, by any interpretation, be concluded that the Plan herein or any such plan ever attains the status of a law within the meaning of Article III, § 21. This same principle applies to any Executive Order by the Governor in approval of any such plan. Thus, where any plan or any particular provision within such a plan is contrary to or conflicts with any constitutional or statutory authority, the offending provision, if severance of such provision is possible, is declared null and void; and if any such plan, in its entirety, be contrary to or in conflict with any constitutional or statutory provision, the entire plan shall be null and void.

*Id.* We then proceeded to make clear that, while an executive order properly issued pursuant to §§ 26.500–26.540 is to be considered and given effect as a public act of the state, it is not a "law" in the constitutional sense:

> It might be asked, does § 26.530 transform such plans into law as that term is used within Article III, § 21? The answer is simply no. It is obvious that the Missouri General Assembly, in enacting § 26.530, intended such plans to become effective after approval for the express purpose of implementing the proposals contained within such plans without the necessity of further action by the General Assembly. Section 26.530 does not declare such plans to be law, but rather, it says such plans shall be 'considered for all purposes as the equivalent in force, effect, and intent of a public act ...' Thus, § 26.530 intends that such plans as they become effective shall, without further legislative action, implement and supplement the reorganization of our state government.

*Id.* After observing that the General Assembly may not constitutionally delegate its legislative power to any other branch of state government, *id.* at 421–22, we concluded our discussion of the separation of powers issue by holding that § 26.530 "must be and is hereby construed to be a statute declaring that such [reorganization] plans shall have the effect of law but shall not be a law within the meaning of Article III, § 21." *Id.* at 422.

*Moore*, therefore, makes three things abundantly clear. First, while an executive agency reorganization effectuated by executive order in full compliance with §§ 26.500–26.540 (and not in conflict with existing constitutional or statutory provisions) is considered for all purposes as the equivalent in force, effect and intent of a public act of the state upon its effective date, it is not a "law" in the constitutional sense. Second, the manifest intent of § 26.530 is to make such executive orders (and the executive agency reorganization plans they implement) fully effective to achieve their expressed state reorganizational goals without the necessity of any further action by the General Assembly. Third, the enforcement of such executive orders does not violate any of the constitutional provisions cited by the Court Ad-

ministrator. *Accord* Op. Mo. Atty. Gen. No. 167 (March 1, 1971).[18]

■ These three conclusions, when considered together and as applied to the Plan, are fatal to the Court Administrator's position in this appeal. First, enforcement of the Order and Plan does not violate the constitutional provisions cited by the Court Administrator because they do not constitute a "law" in a constitutional sense. Indeed, rather than permitting the Governor to unconstitutionally usurp legislative power, the process envisioned by §§ 26.500–26.540 allows him or her to choose the best means to effectuate and execute the programs and public policies adopted by the General Assembly.

Second, the Plan does not effect an amendment of §§ 210.826 and 210.830. The Division of Child Support Enforcement is not dissolved by the Plan. Rather, the duties, responsibility and authority of that Division, except as to the Parents' Fair Share program, are merely subsumed into and taken over by FSD. As noted in *Moore*, the whole design of § 26.530 is for reorganization plans "to become effective after approval for the express purpose of implementing the proposals contained within such plans without the necessity of further action by the General Assembly." 710 S.W.2d at 421. It would be wholly contradictory of this commendatory purpose to say that because §§ 210.826 and 210.830 were not amended to change "Division of Child Support Enforcement" to "Family Support Division," the Plan is effectively inoperable and FSD cannot perform its important duties.

This conclusion is consistent with and supported by our decision in *Flores v. Reagen*, 792 S.W.2d 1 (Mo.App. W.D.1990).

In that case, Flores was dismissed as an employee of the Division of Family Services ("DFS"). *Id.* at 1. Her administrative appeals were of no avail, and she appealed those decisions to this court. *Id.* Her primary contention was that the Director of DFS did not have the authority to fire her because only the Director of the Department of Social Services, of which DFS was a part, had authority to terminate DFS employees. *Id.* at 1–2. This court rejected Flores' argument, recognizing, in the process, that a change of names as part of an executive reorganization transfers all powers and duties to the successor:

> Prior to state reorganization in 1974, the Division of Family Services was known as the Division of Welfare. Section 191.060.2, RSMo 1969, vested in the Division of Welfare the power to hire and fire its employees with the approval of the Director of the Department of Public Health and Welfare, of which the Division of Welfare was a part.

> Pursuant to the authority of § 26.500 to 26.540, RSMo 1969, the governor promulgated reorganization Plan No. 2 of 1973 as a part of the reorganization of the executive branch of government. That plan transferred the powers and duties of the Director of the Department of Public Health and Welfare to the heads of the divisions of the department. This meant that the powers and duties of the Director of the Department of Public Health and Welfare relating to the Division of Welfare were transferred to the Director of the Division of Welfare. That plan also provided that the power of supervision vested in the Director of the Department of Public

---

**18.** "We recognize that an opinion of the Attorney General is not binding upon the courts or the citizenry, but it may be, and often is, persuasive." *Pac. Fire Prot. Dist. v. Mosley,* 939 S.W.2d 467, 470 (Mo.App. E.D.1996) (citing *Mesker Bros. Indus., Inc. v. Leachman,* 529 S.W.2d 153, 158 (Mo.1975)).

Health and Welfare was abolished. Thus, after reorganization Plan No. 2 of 1973 the power to hire and fire employees of the Division of Welfare was fully vested in the Director of the Division of Welfare.

*Id.* at 2. In like fashion, here the Division of Child Support Enforcement's authority, under section 210.826.1, to "bring an action at any time for the purpose of declaring the existence or nonexistence of the father and child relationship presumed under subsection 1 of section 210.822," as well as its authority, under § 210.826.2, to bring "[a]n action to determine the existence of the father and child relationship with respect to a child who has no presumed father under section 210.822," and its power, under § 210.830, to represent a minor child in "any action commenced under sections 210.817 to 210.852 … as his next friend," are now fully vested in FSD.

Finally, the Court Administrator's third argument warrants two additional observations. We have previously held, *supra,* that the Governor promulgated the Plan and issued the Order under the authority vested in him by §§ 26.500–26.540. As is obvious from the specific language of § 1, subsection 16 of the Reorganization Act cited by the Court Administrator, which refers to the 80th General Assembly, that portion of the Act is irrelevant and has no contemporary significance to the issues raised by this appeal. Likewise, the unenacted Senate bill cited by the Court Administrator is also irrelevant, particularly since it did not even seek to amend §§ 210.826 and 210.830, which are the statutes at issue in this appeal.[19] The wording of those statutes, as well as that of § 660.010 and all of the many other laws presently referring to the Division of Child Support Enforcement will remain exactly the same unless and until the General Assembly formally chooses to amend them. Perhaps it will do so, under the terms of the Omnibus State Reorganization Act of 1974 or otherwise, but it is not a *necessary* or *essential* prerequisite that this happen for the Plan to be legally effective.

**CONCLUSION**

For the foregoing reasons, we conclude that the Division of Child Support Enforcement's authority, under section 210.826.1, to "bring an action at any time for the purpose of declaring the existence or nonexistence of the father and child relationship presumed under subsection 1 of section 210.822" now lawfully rests with the Family Support Division. The same is also true of the Division of Child Support Enforcement's authority, under § 210.826.2, to bring "[a]n action to determine the existence of the father and child relationship with respect to a child who has no presumed father under section 210.822," as well as its power, under § 210.830, to represent a minor child in "any action commenced under sections 210.817 to 210.852 … as his next friend." Accordingly, the circuit court erred in ruling that FSD did not have standing to file its petitions in this matter, and we must reverse and remand for further proceedings in accordance with this opinion.

All concur.

**APPENDIX**

280 *Journal of the House*

WHEREAS, the University Extension 4–H Development Program is an educational experience in state government for youth by allowing such youth, with the

---

19. More importantly, as noted in FSD's reply brief, the legislature has already authorized the Governor to reorganize the Department of Social Services by passing §§ 26.500–26.540, and by not voting to disapprove the Order.

aid and supervision of extension staff and legislators, to participate in mock legislative hearings and floor discussions of current bills that are of interest to youth:

NOW, THEREFORE, BE IT RESOLVED that we, the members of the Missouri House of Representatives, Ninety-second General Assembly, hereby grant the 4-H Citizenship Youth Forum permission to use the House Chamber on Thursday, July 3, 2003, from 9:00 a.m. until 11:30 a.m. to conduct a mock legislative session.

## MESSAGES FROM THE GOVERNOR

February 5, 2003

REORGANIZATION PLAN NO. 1

2003

TO THE SENATE AND HOUSE OF REPRESENTATIVES OF THE STATE OF MISSOURI:

By virtue of the authority vested in me by the Constitution and laws of the State of Missouri, including the Omnibus State Reorganization Act of 1974 and sections 26.500 through 26.540, RSMo, I hereby transmit Reorganization Plan No. 1 of 2003, by Executive Order 03-02, establishing the Family Support Division within the Department of Social Services.

Respectfully submitted,

/s/ Bob Holden

Governor

## EXECUTIVE ORDER

### 03-02

WHEREAS, the Department of Social Services is created pursuant to Article IV, Section 12, of the Missouri Constitution and Chapter 660, RSMo; and

WHEREAS, the Division of Family Services is created pursuant to Section 660.010, RSMo, within the Department of Social Services; and

WHEREAS, the Division of Child Support Enforcement is created pursuant to Section 454.400, RSMo, within the Department of Social Services; and

WHEREAS, the Division of Family Services, Income Maintenance Unit serves clients who are also served by the Division of Child Support Enforcement; and

WHEREAS, federal law establishes the child support program and other public assistance programs, separately; and

WHEREAS, by combining the public assistance programs, such as food stamps, temporary assistance, rehabilitation services for the blind, general relief, supplemental nursing care assistance, medical assistance eligibility, and energy assistance, and the child support enforcement program, Missouri could operate more efficiently and effectively; and

WHEREAS, I am committed to integrating executive branch operations to improve the way the state delivers services; and

WHEREAS, the transfer of these functions to a new Family Support Division within the Department of Social Services is a component of the Governor's Reorganization Plan of 2003, which is designed to streamline state government and make it as efficient as possible.

Seventeenth Day—Thursday, February 6, 2003 *281*

NOW, THEREFORE I, BOB HOLDEN, GOVERNOR OF THE STATE OF MISSOURI, by virtue of the authority vested in me by the Constitution and the Laws of the State of Missouri, do hereby establish the Family Support Division within the Department of Social Services and order the Department to:

1. Utilize the Family Support Division as the vehicle through which economies and efficiencies of scale are maximized by combining certain child support functions with certain income maintenance functions; and

2. Transfer all authority, powers, duties, functions, records, personnel, property, contracts, budgets, matters pending, and other pertinent vestiges of the Division of Family Services into the Family Support Division, except individualized assessment for work readiness, work readiness training, child welfare functions, early childhood, and child care assistance, by Type I transfer, as defined under the Reorganization Act of 1974; and

3. Transfer all authority, powers, duties, functions, records, personnel, property, contracts, budgets, matters pending, and other pertinent vestiges of the Division of Child Support Enforcement to the Family Support Division, except the parents fair share program, by Type I transfer, as defined under the Reorganization Act of 1974; and

4. Take the steps necessary to maintain compliance with federal requirements, such as filing a state plan amendment, so as not to jeopardize federal financial participation.

This Order shall become effective no sooner than August 28, 2003 unless disapproved within sixty days of its submission to the First Regular Session of the 92nd General Assembly.

IN WITNESS WHEREOF, I have hereunto set

my hand and caused to be affixed the Great Seal

of the State of Missouri, in the City of Jefferson

on this 5th day of February, 2003.

/s/ Bob Holden

Governor

ATTEST:

/s/ Matt Blunt

Secretary of State

February 5, 2003

REORGANIZATION PLAN NO. 2

2003

TO THE SENATE AND HOUSE OF REPRESENTATIVES OF THE STATE OF MISSOURI:

By virtue of the authority vested in me by the Constitution and laws of the State of Missouri, including the Omnibus State Reorganization Act of 1974 and sections 26.500 through 26.540, RSMo, I hereby transmit Reorganization Plan No. 2 of 2003, by Executive Order 03–03, establishing the Children's Division within the Department of Social Services.

Respectfully submitted,

/s/ Bob Holden

Governor